# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-CV-278-TCK-PJC |
| | ) | |
| (1) LINDSEY K. SPRINGER, Individually | ) | |
| and as Co-Trustee of the S.L.C.A. Family | ) | |
| Trust; (2) REGINA M. CARLSON, as | ) | |
| Co-Trustee of the S.L.C.A. Family Trust; | ) | |
| (3) MARTHA F. MOORE, Individually and | ) | |
| as Trustee of the W.T. Moore and Martha F. | ) | |
| Moore Revocable Trust dated June 12, 2002, | ) | |
| (4) W.T. SMITH; and (5) JANETH S. SMITH, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

On May 9, 2008, Plaintiff United States of America ("United States") filed its Complaint against: (1) Lindsey K. Springer ("Springer"), individually and as co-trustee of the S.L.C.A. Family Trust; (2) Regina M. Carlson, as Co-Trustee of the S.L.C.A. Family Trust; (3) W.T. Moore; (4) Martha F. Moore; (5) W.T. Smith; (6) Janet S. Smith; (7) Albert Mendez, individually and as trustee of the Mendez Family Trust; and (8) Kathy Anglin, in her official capacity as Creek County Treasurer. (Compl. Doc. 2.) On October 10, 2008, the United States filed an Amended Complaint (Doc. 36) which, among other things, eliminated Defendants Mendez, Anglin, and W.T. Moore as defendants.[1] The United States seeks to reduce to judgment the federal tax assessments made against Springer for his unpaid 1990-1995 federal income tax liabilities and the penalty provided by section 6673 of the Internal Revenue Code (26 U.S.C.). (Am. Compl., Doc. 36, ¶ 2.) The United

---

[1] W.T. Moore died on September 18, 2007. The United States also changed the name "Janet Smith" so that it correctly reads "Janeth Smith."

States also seeks a judicial determination that the "S.L.C.A. Family Trust" is Springer's alter ego or nominee. Finally, the United States seeks to foreclose its tax liens against real property in Creek County, Oklahoma, owned by Springer but titled in the name of the S.L.C.A. Family Trust. (*Id.*)

Now before the Court are the following pending motions: "Springer's Motion to Enjoin under 27 U.S.C. § 6330(e)" (a motion for permanent injunction) (Doc. 57); "Springer's First Amended Motion to Dismiss Amended Complaint" (Doc. 64); Motion to Dismiss for Statute of Limitations Violations (Doc. 81); Motion to Dismiss (the cross-claims) (Doc. 121); Motion for Summary Judgment by Cross Claimants Against S.L.C.A. Family Trust (Doc. 153); United States' Motion for Summary Judgment (Doc. 154); Motion for Summary Judgment (Doc. 161) (filed by Springer); and Springer's Emergency Motion to Enjoin Under 26 U.S.C. § 6330(e) and for Temporary Restraining Order, which was filed by the Court Clerk as two separate documents, a motion for temporary restraining order (Doc. 172) and a motion for preliminary injunction (Doc. 173).

## I.     Allegations and Evidence[2]

### A.     Jurisdiction and Venue

The United States alleges that jurisdiction over this action was conferred by 28 U.S.C. § 1340 and § 1345, and by 26 U.S.C. § 7402. (Am. Compl. Doc. 36, ¶ 3.) Further, the United States alleges that venue in the Northern District of Oklahoma is proper under 28 U.S.C. § 1396 because all the defendants reside in this judicial district, and also because the real property that is the subject

---

[2] Because the Court is addressing the motions to dismiss as well as the motions for summary judgment, references in this section are made to the allegations of the Amended Complaint as well as to supporting evidentiary materials subsequently offered in the various motions.

of this action is located in Creek County, Oklahoma. (*Id.* ¶ 4.) Springer resides in Kellyville, Oklahoma, within this judicial district. (*Id.* ¶ 5; Strong Decl., Doc. 158, Ex. 26., Springer Depo. 8:3-15.) Springer was also named as a defendant in his capacity as Co-Trustee of the S.L.C.A. Family Trust. (Am. Compl., Doc. 36, ¶ 5.)

### B.     Springer's Federal Income Tax Liabilities

On September 3, 1996, the Commissioner of Internal Revenue issued two notices of deficiency to Springer, one asserting federal income tax deficiencies against him for the years 1990 through 1992 and the other asserting federal income tax deficiencies against him for the years 1993 through 1995. (*Id.* ¶ 10; Darnold Decl., Doc. 156, ¶ 5, Ex. 1.) In these notices of deficiency, the Internal Revenue Service ("IRS") determined that Springer was liable for federal income tax deficiencies and penalties for his failure to file federal income tax returns (26 U.S.C. § 6651(a)) and pay estimated taxes (26 U.S.C. § 6654) for the 1990-1995 tax years. (Am. Compl., Doc. 36, ¶ 11; Darnold Decl., Doc. 156, ¶ 5, Ex. 1.)

Springer filed a petition with the United States Tax Court to redetermine the tax deficiencies proposed by the Commissioner for the 1990-1995 tax years. (Am. Compl., Doc. 36, ¶ 12; Darnold Decl., Doc. 156, ¶ 6, Ex. 1.) The Tax Court entered an order dismissing Springer's petition and deciding that he was liable for deficiencies and statutory additions to tax for the 1990-95 tax years as set forth in the notices of deficiency. In addition, the Tax Court imposed a $4,000 penalty against Springer pursuant to 26 U.S.C. § 6673 with respect to the tax year ending December 31, 1996. (Am. Compl., Doc. 36, ¶ 13; Darnold Decl., Doc. 156, ¶ 12, Ex. 5.) Springer appealed from the Tax Court decision to the United States Court of Appeals for the Tenth Circuit. The Tenth Circuit dismissed his appeal in *Springer v. Comm'r*, No. 97-9008 (10th Cir. Oct. 15, 1997), because he had

failed to pay the sanctions assessed against him in a prior case, *Springer, et al. v. Internal Revenue Serv.*, 81 F.3d 173 (10th Cir. 1996). (Am. Compl., Doc. 36, ¶ 14; Darnold Decl., Doc. 156, ¶ 12, Ex. 5.)

The United States alleges that, in 1997, 1998, 1999, 2005, and 2007, a delegate of the Secretary of the Treasury made assessment against, and gave notice and made demand for payment upon Springer, for unpaid federal income taxes and statutory additions to tax for the 1990-96 taxable years. (*See* Am. Compl., Doc. 36, ¶ 15; Rice Decl., Doc. 157, Exs. 6-12.) The total unpaid balance of the assessments is calculated by the United States as approximately $161,897.83. (Am. Compl., Doc. 36, ¶ 15.) Nonetheless, Springer never paid the tax assessments together with the statutory additions to tax and interest which have accrued thereon as provided by law. (*Id.* ¶ 16.) The United States calculates the total unpaid balance of the assessments and statutory additions to tax for the 1990-1995 tax years, together with the 26 U.S.C. § 6673 penalty and accrued but unassessed statutory interest and penalties as approximately $378,131.54. (*Id.* ¶ 18; Rice Decl., Doc. 157, ¶ 10.[3])

The IRS filed a notice of federal tax lien with respect to the unpaid federal income taxes and statutory additions to tax for the 1990-1996 tax years against Springer with the County Clerk of Creek County, Oklahoma, on April 28, 1999. (Am. Compl., Doc. 36, ¶ 19; Ambuehl Decl., Doc. 22, ¶ 13, Ex. 16; Tinkler Decl., Doc. 21, ¶¶ 9 ,10, Exs. 2, 3.)

---

[3]Rice calculates the total as $381,702.39, perhaps due to interest and penalties accruing after the filing of the Amended Complaint.

### C.    Suspension and Review of Efforts to Collect

On March 2, 2005, the IRS sent a "Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing" (IRS Letter 1058) (the "Notice") to Springer with respect to the delinquent federal tax liabilities described above.  (Am. Compl., Doc. 36, ¶ 21; Rice Decl., Doc. 157, ¶ 6.)  In response, on March 15, 2005, Springer filed a Request for a Collections Due Process Hearing (IRS Form 12153) with the IRS.  (Am. Compl., Doc. 36, ¶ 22; Rice Decl., Doc. 157, ¶ 7.)  Consequently, the IRS suspended its efforts to collect the federal tax liabilities while the hearing and any appeals therefrom were pending.  (Am. Compl., Doc. 36, ¶ 22; Rice Decl., Doc. 157, ¶ 7.)  On August 16, 2005, the IRS sent Springer separate Notices of Determination that sustained the IRS decision to levy upon Springer's assets to collect those federal tax liabilities.  (Am. Compl., Doc. 36, ¶ 25; Strong Decl., Doc. 158, ¶ 3, Ex. 13.)    Springer sought judicial review of the Notice of Determination on or about September 15, 2005, in *Springer v. United States, et al.*, Case No. 5:05-CV-01075-F (W.D. Okla.).  (Am. Compl., Doc. 36, ¶ 26; Strong Decl., Doc. 158, ¶ 4, Ex. 14.)

On August 7, 2006, the Western District of Oklahoma dismissed the  action on the grounds that res judicata barred the action.  (Am. Compl., Doc. 36, ¶ 27; Strong Decl., Doc. 158, ¶ 4, Ex. 14.)  Springer filed a notice of appeal on August 23, 2006.  The Tenth Circuit affirmed the dismissal of the civil action on May 1, 2007 in Appeal No. 05-6387, and Springer's petition for a writ of certiorari was denied by the United States Supreme Court on January 14, 2008.  (Am. Compl., Doc. 36, ¶ 27; Strong Decl., Doc. 158, ¶¶ 5,6,  Exs. 15, 16; *see Springer v. Internal Revenue Serv. ex. rel. United States*, Case Nos. 05–6387, 06-5123, 06-6268, 2007 WL 1252475  (10th Cir. May 1, 2007), *cert. den.* 128 S.Ct. 1093 (2008).)

Within 30 days of the dismissal of the action in the Western District case, Springer filed a petition with the Tax Court in *Springer v. Comm'r*, Dkt. No. 17707-06L, with respect to the same Notices of Determination described above. (Am. Comp. Doc. 36, ¶ 28.) On or about November 14, 2007, the Tax Court granted the motion of the Commissioner for summary judgment and determined that the IRS could proceed with the collection of Springer's unpaid federal income tax liabilities for the 1990-1995 tax years and the 26 U.S.C. § 6673 penalty for 1996. (Am. Compl. Doc. 36, ¶ 29; Strong Decl., Doc. 158, ¶ 7, Exs. 17.) Springer appealed that decision and, on August 31, 2009, the Tenth Circuit affirmed the decision of the Tax Court. *Springer v. Comm'r*, 580 F.3d 1142 (10th Cir. 2009). In his briefing, Springer stated that he was preparing a petition for writ of certiorari to the United States Supreme Court due January 24, 2010. (See Supp. Br., Doc. 174, n.2.). The docket for the Supreme Court shows that he filed a petition for writ of mandamus on January 21, 2010 in Case No. 09-8701.

**D.    The Refiled Federal Tax Liens**

While the actions in the Tenth Circuit and the Tax Court were pending in 2007, the IRS refiled notices of federal tax liens on April 26, 2007, June 12, 2007, and June 26, 2007 with respect to the unpaid federal income taxes and statutory additions to tax for the 1990-1995 tax years and the 26 U.S.C. § 6673 penalty. (*Id.* ¶ 20; Ambuehl Decl., Doc. 22, ¶ 13, Ex. 16; Tinkler Decl., Doc. 21, ¶¶ 9, 10, 18, 20, 22, Exs. 2, 3, 10, 12, 14.) The April 26, 2007 notice duplicates the April 28, 1999

notice. (*Id.* ¶ 30[4]; Ambuehl Decl., Doc. 22, ¶ 15, Ex. 16.)  The June 26, 2007 notices duplicate the notices filed against Springer on June 12, 2007.  (*Id.* ¶ 32, Ambuehl Decl., Doc. 22, ¶ 17, Ex. 16.)

On or about August 23, 2007, the IRS erroneously mailed two "Taxpayer's Copies" of Certificate[s] of Release of Federal Tax Lien (Form 668(A)) ("Certificates of Release") to Springer. These certificates, which set forth the same serial numbers as the notices filed on June 26, 2007, were not filed with the County Clerk of Creek County, Oklahoma.  The IRS had determined that the tax liens did not meet the requirements for release under 26 U.S.C. § 6325(a) as the underlying tax liabilities had not been satisfied,  nor had they become unenforceable, and no bond had been filed with the IRS with respect to the liabilities.  (*See id.* ¶¶ 35, 38.)  The IRS withdrew the April 26, 2007 lien by filing a Withdrawal of Filed Notice of Federal Tax Lien with the County Clerk of Creek County, Oklahoma, on or about September 4, 2007.  (*Id.* ¶ 31; Ambuehl Decl., Doc. 22, ¶ 16, Ex. 16; Tinkler Decl., Doc. 21,  ¶ 19, Ex. 11.)  On or about September 13, 2007, the IRS similarly withdrew the two notices filed on June 26, 2007. (*Id.* ¶ 33; Ambuehl Decl., Doc. 22, ¶ 18, Ex. 16; Tinkler Decl., Doc. 21,  ¶¶ 21, 23, Exs. 13, 15.)

After the filing of the Complaint in this action, Springer filed a motion to dismiss (Doc. 10), in which he asserted that the IRS had released the federal tax liens.  (See Mem. Supporting Springer's Mot. to Dismiss, Doc. 11, at 23-28.)  The motion to dismiss was filed on July 16, 2008. (See Doc. 10.)  On July 29, 2008, Springer moved to amend his Motion to Dismiss to attach as exhibits certain certificates of release of lien, which the Court granted.  (Docs. 13, 14.)  He claimed

---

[4] This paragraph of the Amended Complaint indicates that the April 26, 2007 notice duplicated the notice of April 28, 2007, but the year of that date is obviously a typographical error because it references Exhibit 1 to the Amended Complaint, and Exhibit 1 is the April 28, 1999 notice.

that he had received the certificates on July 19, 2008, although they were dated August 23, 2007. (*Id.*) On July 30, 2008, the IRS advised Springer that the taxpayers' copies of the Certificates of Release were sent to him in error because the notices of federal tax lien to which they referred were withdrawn under 26 U.S.C. § 6323 and the liens were not released. (Am. Compl., Doc. 36, ¶ 36.)

On August 1, 2008, the United States moved for an extension of time to respond to the Motion to Dismiss, stating that it needed to time to investigate and describe the circumstances surrounding the certificates of release of lien. (See Doc. 15). The Court granted the motion for an extension of time. (See Doc. 16.) The IRS explains in the Amended Complaint that, also on August 1, 2008, Springer called a toll-free number at the Centralized Lien Processing (CLP) Unit at the IRS Center in Cincinnati, Ohio to inquire about the certificates of release. According to Plaintiff, the IRS tax examiner who took the call mistakenly believed the releases were valid and, as a result, he erroneously caused two Certificates of Release of Federal Tax Lien (Form 668(Z)) to be filed with the County Clerk of Creek County, Oklahoma, with respect to Springer's unpaid federal tax liabilities. (*Id.* ¶ 37.)

On or about August 4, 2008, the IRS filed two Revocation[s] of Certificate of Release of Federal Tax Lien (Form 12474) to revoke the certificates filed on August 1, 2008. The IRS also filed another notice of federal tax lien against Springer with respect to the unpaid federal tax liabilities at issue on that date, and it filed a notice of federal tax lien against the S.LC.A. Family Trust as the nominee of Lindsey K. Springer as well. (Norman Decl., Doc. 24, ¶ 13, Ex. 24; ¶ 14, Ex. 25.) Springer requested a collection due process ("CDP) hearing in connection with the August 4, 2008 Notice of Federal Tax Lien, and after the IRS denied his request, Springer filed a petition

in the United States Tax Court on February 18, 2009, *Springer v. Comm'r*, No. 3781-90L. (See Resp. Br., Doc. 176, at 2; Reply Br., Doc. 165, at 8.) That petition remains pending.

On August 15, 2008, Plaintiff filed its response to the motion to dismiss and attached the declarations of five IRS employees regarding the circumstances surrounding the certificates of release. (See Docs. 20-25.) On October 10, 2008, the United States filed the Amended Complaint which set forth an explanation for the circumstances surrounding the certificates of release of lien. (Am. Compl. Doc. 36.) On November 20, 2008, the Court denied Springer's Motion to Dismiss as moot. (Doc. 60.) However, Springer raised many of the same arguments in the Amended Motion to Dismiss (Doc. 64) currently at issue.

### E.    The Subject Real Property

The real property that is the subject of this action and upon which the United States seeks to foreclose its tax liens, is described as follows:

> The North Half (N/2) of the Southeast Quarter (SE/4) of the Northwest Quarter (NW/4) of Section 2, Township 17 North, Range 10 East, of Creek County, State of Oklahoma.

(Am. Compl., Doc. 36, ¶ 44; Strong Decl., Doc. 158, Ex. 26, Springer Depo., 8:7-10). On or about March 11, 1994, W.T. Moore and W.T. Smith, on behalf of themselves and their respective spouses, entered into a contract to sell the surface and surface rights of the subject real property described above to William D. Greenhaw and Linda F. Greenhaw for the sum of $34,000.00. (Am. Compl., Doc. 36, ¶45; Strong Decl., Doc. 158, Ex. 28, W.T. Smith Depo., 10:12-24.) By Joint Tenancy Warranty Deed dated April 14, 1994, the Moores and the Smiths conveyed the subject property to the Greenhaws. (Am. Compl. Doc. 36, ¶ 46; *see* Counterclaim, Doc. 92, ¶ 2; Cross-Claim, Doc. 93, ¶ 1; Mot. Summ. J. Exs., Doc. 159, Ex. 18.) In a document titled "Real Estate Mortgage with Power

of Sale," dated April 15, 1994, the Greenhaws mortgaged the above-described real property to the Moores and Smiths. (Am. Compl., Doc. 36, ¶ 47; *see* Counterclaim, Doc. 92, ¶ 2; Cross-Claim, Doc. 93, ¶ 2; Mot. Summ. J. Exs., Doc. 159, Ex. 19.) By General Warranty Deed, dated July 30, 1996, the Greenhaws conveyed the subject property to the S.L.C.A. Family Trust dated 3/18/94. (Am. Compl., Doc. 36, ¶ 48; *see* Counterclaim, Doc. 92, ¶ 3; Cross-Claim, Doc. 93, ¶ 3.; Mot. Summ. J. Exs., Doc. 159, Ex. 20.) The S.L.C.A. Family Trust assumed the mortgage executed by the Greenhaws on April 15, 1994, in favor of the Moores and Smiths. (Am. Compl., Doc. 36, ¶ 48; *see* Counterclaim, Doc. 92, ¶ 4; Mot. Summ. J. Exs., Doc. 159, Ex. 20.)

On July 29, 1996, the day before the conveyance described in the preceding paragraph, the S.L.C.A. Family Trust executed an Assumption Agreement in favor of the Moore's and Smiths. (Am. Compl., Doc. 36, ¶ 49; *see* Counterclaim, Doc. 92, ¶ 4; Cross-Claim, Doc. 93, ¶ 4; Mot. Summ. J. Exs., Doc. 159, Ex. 21.) The defendants, Lindsey K. Springer and Regina M. Carlson, formerly known as Regina M. Springer, in their capacities as trustees of the S.L.C.A. Family Trust, executed the Assumption Agreement on behalf of the grantee, the S.L.C.A. Family Trust. (Am. Compl., Doc. 36, ¶ 49; *see* Counterclaim, Doc. 92, ¶ 4; Mot. Summ. J. Exs., Doc. 159, Ex. 21.)

On September 3, 1996, the Commissioner of Internal Revenue issued notices of deficiencies to Springer with respect to his unpaid 1990-1995 federal income tax liabilities. (Am. Compl., Doc. 36, ¶ 50.) On or about August 23, 2002, W.T. Moore and Martha F. Moore transferred their rights, title and interests in the real estate mortgage to the W.T. Moore and Martha F. Moore Revocable Trust Dated June 12, 2002. (Am. Compl., Doc. 36, ¶ 51; *see* Counterclaim, Doc. 92, ¶ 4; Cross-Claim, Doc. 93, ¶ 5; Strong Decl., Doc. 158; Ex. 29, M. Moore Depo. 25:21 - 26:3.) W.T. Moore died on or about September 18, 2007. (Am. Compl., Doc. 36, ¶ 52.)

After the conveyance of the subject real property to the S.L.C.A. Trust on July 30, 1996, Springer made monthly mortgage payments of $360.06 to the defendants W.T. and Martha Moore (after September 18, 2007, as trustee of the W.T. Moore and Martha F. Moore Revocable Trust Dated June 12, 2002) and W.T. Smith and Janeth S. Smith. When paid, the funds used to pay the mortgage came exclusively from Springer. (*Id.* ¶ 53; Strong Decl., Doc.158, Ex. 28, W.T. Smith Depo. 43:1-44:5; Ex. 26, Springer Depo. 16:11 - 18:10.) Martha Moore and the Smiths assert that the S.L.C.A. Family Trust made its last payment in February 2008 and brought current the principal and interest owed for the payment due February 15, 2008, but that the S.L.C.A. Family Trust ceased payment after that date. (Counterclaim, Doc. 92, ¶ 6; Cross-Claim, Doc. 93, ¶ 8. W.T. Smith Depo. 41:14-24.)

The Smiths and Martha Moore allege that the defendant S.L.C.A. Family Trust is in default under the terms of the original note and the original mortgage and the mortgage assumption agreement. (Counterclaim, Doc. 92, ¶ 6; Cross-Claim, Doc. 93, ¶ 8.) They seek to have the Court determine the default, liquidate the amount owed, and order foreclosure of the mortgage and sale of the property securing the note and mortgage. (Counterclaim, Doc. 92, ¶ 6; Cross-Claim, Doc. 93, ¶ 8.) They also ask that the Court declare that their claims and rights have priority over the claims of any party as to the real property at issue here and that they are entitled to be paid first from the property sale proceeds after payment of necessary sale expenses. (See Counterclaim, Doc. 92, ¶ 7; Cross-Claim, Doc. 93, at 6.) They assert that, as of the date they filed their cross-claim, the S.L.C.A. Family Trust owed them the sum of $5,219.03. (Cross-Claim, Doc. 93, ¶ 9.) Defendants Martha F. Moore, W. T. Smith, and Janeth S. Smith filed their Counterclaim and Cross-Claims on January 28, 2009 (See Docs. 92, 93.)

Springer and Regina Carlson (formerly Regina Springer) occupied the subject real property as their primary residence from the time it was conveyed to the S.L.C.A. Family Trust in 1996 until 1999, when they divorced. (Am. Compl., Doc. 36, ¶ 53.) Lindsey Springer has continuously occupied the subject real property since it was conveyed to the S.L.C.A. Family Trust. Also, he has made improvements to the subject property, and (through the S.L.C.A. Family Trust) he has paid the Creek County property taxes levied on the subject property. (*Id.*; Strong Decl., Doc. 158, Ex. 26, Springer Depo. 10:22 - 11:9, 16:11-18:10, 27:13 - 28:8.) To pay the Creek County property taxes levied and the improvements made to the property, the S.L.C.A. Family Trust uses funds exclusively from Springer. (Strong Decl., Doc. 158, Ex. 26, Springer Depo. 10:22 - 11:9, 12:10-17.) Springer has sworn to the Creek County Treasurer that he was "at all times a Trustee involved in 'purchase, taxes and maintain [sic] of property'" as a co-trustee of the property. (Mot. Summ. J. Exs., Doc. 159, Ex. 23.) Springer is the sole decision-maker concerning the property. Since their divorce in 1999, Springer's ex-wife, Regina Carlson has not been aware of what has been done to the property as she no longer lives there. Carlson has visited the property only to pick up her children. Springer and Carlson do not meet regarding the S.L.C.A. Family Trust and she has not made any decisions regarding the S.L.C.A. Family Trust. (Strong Decl., Doc. 158, Ex. 27, Carlson Depo. 15:17-22; 17:4-5; 18:13-21, 50:16-20.)

The address for the S.L.C.A. Family Trust (5147 S. Harvard Ste. 116, Tulsa, OK 74135) on its 2003 Creek County property tax bill is identical to the address used by Springer on pleadings filed in the United States District Court for the Northern and Western Districts of Oklahoma. (Am. Compl. Doc. 36, ¶ 54.) Notices of federal tax lien with respect to Springer's delinquent 1990-1995 federal income tax liabilities and the 26 U.S.C. § 6673 penalty assessed against him for 1996 were

filed against the S.L.C.A. Family Trust, as nominee of Lindsey K. Springer, with the County Clerk for Creek County, Oklahoma, on November 1, 2005, and November 16, 2005. (*Id.* ¶ 55.) Until 2005, Springer paid the *ad valorem* taxes levied by Creek County, Oklahoma, on the subject real property. The 2005 county property taxes were not paid when they were due. On or about January 2, 2008, Jeanie L. Springer, current spouse of the defendant Lindsey K. Springer, paid $1,161.67 to the Creek County Treasurer to redeem the subject real property. (*Id.* ¶ 57.)

## II.    Standard of Review

Because the parties discuss many of the same issues in their briefing on the motions to dismiss as well as the motions for summary judgment, and the Court is addressing all dispositive issues herein, the Court sets forth the standard of review for both types of motions before addressing each motion individually.

### A.    Motions to Dismiss

In reviewing motions to dismiss, the Court generally accepts the allegations in the Complaint as true unless the non-moving party challenges the facts, in which case the Court may allow some evidence. *E.g.*, *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (discussing Rule 12(b)(1) motions). Where there is no evidentiary hearing, "the plaintiff need only make a prima facie showing that jurisdiction exists" and "[a]ll factual disputes are resolved in favor of the plaintiffs." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009) (internal quotations and citations omitted) (discussing a Rule 12(b)(2) motion). Similarly, the plaintiff bears the burden of proof to establish proper venue, *see Pierce v. Shorty Small's of Branson*, 137 F.3d 1190, 1192 (10th Cir. 1998), and service of process, *see* 5B Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1353 (3d ed. 2004).

In considering a motion to dismiss under Rule 12(b)(6), the inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1969 (2007)). In conducting this inquiry, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Id.*; *see Gallaher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009). However, "conclusory allegations are not enough to withstand a motion to dismiss." *Gallagher*, 587 F.3d at 1068 (citation omitted).[5]

### B.   Summary Judgment

Summary judgment is proper only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party seeking to overcome a motion for summary judgment must make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33

---

[5] Both movant and respondent have attached evidentiary materials to their memoranda relevant to the motions to dismiss, but it is not clear if these evidentiary materials are relevant to Springer's lack of subject matter jurisdiction defense or his failure to state a claim defense. If they are relevant to the latter and considered by the Court, "the motion must be treated as one for summary judgment under [Fed. R. Civ. P.] 56." Fed. R. Civ. P. 12(d). Further, [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* The parties have had sufficient time to present all material pertinent to the motions to dismiss; indeed, the parties address many of the same issues in their respective motions for summary judgment. The evidentiary materials appear relevant only to issues regarding the validity and revocation of the liens and the statute of limitations issue, but it is not clear whether these issues are 12(b)(1) matters or 12(b)6) matters. In any event, the Court does not deem it necessary to formally convert that portion of the motions to dismiss based on Fed. R. Civ. P. 12(b)(6) to a Rule 56 motion for summary judgment since the Court is addressing all dispositive issues present in both the motions to dismiss and the motions for summary judgment herein.

(1986). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *E.g., Turner v. Public Serv. Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009) (citation omitted). However, the party seeking to overcome a motion for summary judgment "must still identify sufficient evidence requiring submission to the jury. . . . [He] cannot avoid summary judgment merely by presenting scintilla of evidence to support [his] claim; [he] must proffer facts such that a reasonable jury could find in [his] favor." *Turner*, 563 F.3d at 1142 (citations omitted). The Court considers evidence in the form of an affidavit by the Plaintiff only if it is based on his personal knowledge and sets forth facts that would be admissible at trial. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002) (citation omitted).

## III.    Springer's First Amended Motion to Dismiss (Doc. 64)

In Springer's First Amended Motion to Dismiss, Springer argues that dismissal is appropriate under Fed. R. Civ. P. 12(b)((1) for lack of subject matter jurisdiction; under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction; under Fed. R. Civ. P. 12(b)(3) for improper venue; under Fed. R. Civ. P. 12(b)(5) for insufficient service of process; and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Docs. 64, 65.) He has attached his own declaration, his request for a CDP hearing, and two letters from the IRS to his 48-page memorandum in support of the motion. (*See* First Am. Mem., Doc. 65.)

Springer sets forth 14 "questions presented," most of which are incomprehensible, frivolous, irrelevant, or res judicata. For example, his first argument is that "28 U.S.C. § 116, entitled 'Oklahoma,' is unconstitutional and in violation of Article IV and the 10th Amendment to the Constitution of the United States, the separation of powers between that of the State of Oklahoma and that limited enumeration of power given the United States by such States like Oklahoma." (*Id.*,

at 3.) Although his arguments are difficult to follow, the substance of his defense, and the only arguments that merit significant discussion, appear to be that (1) the United States' liens are invalid, and (2) the United States' revocations of its lien releases are invalid.

### A. Validity of the Federal Tax Liens

Springer argues that the "claimed 'Tax Lien' has been released and no valid lien currently exists." (First. Am. Mem., Doc. 65, at 30.) When the IRS assesses taxes, a lien automatically arises against the taxpayer and his property interests. 26 U.S.C. § 6321. However, to protect the United States' interests in the taxpayer's real property against certain types of creditors, the IRS will file a Notice of Federal Tax Lien pursuant to 26 U.S.C. § 6323. A withdrawal of a notice does not extinguish the underlying tax lien. *See* 26 U.S.C. § 6323(j); Treas. Reg. § 301.6223(j)-1. The withdrawal documents and the IRS letter to Springer concerning the withdrawals state that the withdrawal of the notices "does not affect the statutory lien provided by IRC section 6321; it simply relinquishes any lien priority obtained by the Internal Revenue Service when the notice was filed." (See Tinkler Decl., Doc. 21, Exs. 11, 13, 15; Mot. to Dismiss, Doc. 10, Ex. 1.)

As explained in the facts section above, the IRS filed Notices of Federal Tax Liens against Springer on April 28, 1999, and it refiled the notices on April 26, 2007, June 12, 2007, and June 26, 2007. Realizing that it had filed duplicates, the IRS requested Withdrawals of Notice of Federal Tax Lien from the Centralized Lien Processing (CLP) Unit that handles the processing of all lien certificates from the IRS' field offices. (Wiedemann Decl. ¶¶ 7, 8.) At the request of officials in the field office, CLP employees processed the Withdrawals on August 23, 2007, which were filed on September 4, 2007 (for the April 26 duplicates) and September 13, 2007 (for the June 26 duplicates) with the Creek County Clerk's Office. The withdrawals were meant to withdraw the

duplicate Notices of Federal Tax Lien filed on April 26, 2007 and June 26, 2007. (Ambuehl Decl. Doc. 22, ¶¶ 16, 18.) They were not meant to withdraw the notices filed on April 28, 1999 and refiled on June 12, 2007, and they do not operate to release the underlying liens.

### B. Revocation of the Certificates of Release

Processing of the withdrawals caused certificates of release of federal tax lien to be generated erroneously. (Wiedemann Decl. Doc. 23, ¶ 8.) Before the certificates could be mailed to be recorded, the CLP caught the mistake and did not mail the certificates to the Creek County Clerk. (*Id.*) However, certain records in the IRS computer program used to track liens, the Automated Lien System, were not updated to reflect that the certificates had been processed in error. (*Id.* ¶ 15.)

As set forth above, Springer called a toll-free number for the CLP on July 24, 2008, after the filing of this lawsuit, and asked the tax examiner who answered his call why the certificates had not been recorded with the county clerk. (Jackson Decl., Doc. 25, ¶¶ 6, 10.) The tax examiner checked the IRS computer system and saw that the releases had been processed on August 23, 2007. (*Id.* ¶ 13.) He verified with the county clerk's office that the releases had not been received. Believing the releases to be valid, he again processed the certificates to be sent to the county clerk. (*Id.*) This time, however, the CLP did not discover the error until the certificates had been recorded with the county clerk. (Wiedemann Dec., Doc. 23, ¶¶ 14, 15.) On the date that the certificates were due to be mailed to the county clerk, the IRS also sent a letter to Springer explaining that the certificates were erroneous and instructing him not to file the copies he received. (Jackson Decl., Doc. 25, ¶ 14; Wiedemann Decl., Doc. 23, ¶ 13, Ex. 24.) The certificates thus were erroneously recorded on August 1, 2008. (Norman Decl., Doc. 24, ¶¶ 9, 10, Ex. 21 -22.)

A filed Certificate of Release generally operates to show that the lien referred to in such a certificate is extinguished. 26 U.S.C. §6235(f)(1)(A). However, it does not establish that the underlying tax liability has been paid. *See Urwyler v. United States*, 75 A.F.T.R. 2d 95-2114, 95-1 USTC ¶ 50,238 (E.D.Cal. 1995); *Miller v. Comm'r*, 23 T.C. 565, 569 (1954); *Comm'r v. Angier Corp.*, 50 F.2d 887, 892 (1st Cir. 1931); *see also In re Goldston*, 104 F.3d 1198, 1200 (10th Cir. 1997) (distinguishing the liability for tax from the assessment); Rev. Rul. 85-67, 1985-1 C.B. 364 (same); *In re Doerge*, 181 B.R. 358, 363 (Bankr. S.D. Ill. 1995).

More important, the statute explicitly provides for the revocation of a certificate of release. The statute provides that:

> If the [IRS] determines that a certificate of release . . . imposed by section 6321 was issued erroneously or improvidently . . . and if the period of limitation on collection after assessment has not expired, the [IRS] may revoke such certificate and reinstate the lien - (A) by mailing notice of such revocation to the person against whom the tax was assessed at his last known address, and (B) by filing notice of such revocation in the same office in which the notice of lien to which it relates was filed (if such notice had been filed).

26 U.S.C. § 6325(f)(2); *see, e.g., United States v. Reid*, 88 A.F.T.R. 2d 2001-6828, 1000-1 USTC ¶ 50,340 (S.D. Ga. Mar. 21, 2000). An IRS Revenue Officer Advisor mailed a notice of the revocation to Springer at his last known address and filed a notice of the revocation with the Creek County Clerk's Office. (Norman Decl., Doc. 24, ¶¶ 7-8, 11-12, Exs. 22-23.) The IRS also filed new Notices of Federal Tax Lien on August 4, 2008. (*Id.*, ¶¶ 9, 10, 13, 14, Exs. 24-25.) The revocations certify that the IRS released the lien in error. As discussed more fully below, the period of limitation on collection after assessment had not expired. Therefore, the IRS satisfied the statutory requisites of 26 U.S.C. § 6325(f)(2) and the lien was reinstated. The certificates were

revoked; the liens remain valid. Springer's First Amended Motion to Dismiss (Doc. 64) should be denied.

## IV. Motion to Dismiss for Statute of Limitations Violations (Doc. 81)

Springer argues that, if the liens are valid, the statute of limitations has run on the United States' ability to foreclose on the liens. The Internal Revenue Code provides, in relevant part:

> Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—(1) within 10 years after the assessment of the tax, . . .

26 U.S.C. § 6502(a). Springer asserts that the United States' claims are outside of this ten-year period because the assessment of the taxes and penalties, if made at all,[6] was allegedly made on May 29, 1997, but the IRS "waited til [sic] August 4, 2008, to place a lien on Springer over those 'assessments' with a proper CDP notice." (Mot. to Dismiss, Doc. 81, at 1.) He does not make clear the significance of the August 4, 2008 date, but other documents, as set forth above, show August 4, 2008 as the date the IRS filed its revocations of the certificates of release and the date it filed another notice of federal tax lien with respect to the unpaid federal tax liabilities at issue.

As set forth in the Amended Complaint, the IRS assessed Springer for his 1990-1995 income tax liabilities on May 29, 1997. (Am. Compl. Doc. 36, ¶¶ 13, 15.) On April 9, 1998, the IRS assessed the § 6673 penalty against Springer. (*Id.* ¶ 15.) Since the earliest assessment was May 29, 1997, the statute of limitations would have run on May 29, 2007, without tolling of the period of limitations. The following provisions of the statute are relevant.

_____

[6]Springer claims that the IRS did not make an assessment pursuant to 26 U.S.C. § 6203. This issue is discussed more fully in connection with Springer's Motion for Summary Judgment (Doc. 161) below.

> If a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable.

26 U.S.C. § 6502(a). If a taxpayer requests a CDP hearing in connection with the issuance of a notice to levy, "the running of any period of limitations under section 6502 . . . shall be suspended for the period during which such hearing, and appeals therein, are pending" and an additional 90 days thereafter. 26 U.S.C. § 6330(e)(1). The corresponding regulations clarify that the period of limitations is "suspended until the date . . . the determination resulting from the CDP hearing becomes final by expiration of the time for seeking judicial review or the exhaustion of any rights to appeals following judicial review" plus 90 days thereafter. Treas. Reg. § 301.6330-1(g)(1).

On March 2, 2005, the IRS sent a notice of levy to Springer, and on March 15, 2005, Springer requested a CDP hearing. When the IRS sustained its decision to levy upon his assets, Springer then appealed that decision to the Western District of Oklahoma, the Tenth Circuit, and the Supreme Court. He also petitioned the Tax Court after his civil action was dismissed in district court, and he appealed the decision of the Tax Court to the United States Court of Appeals for the Tenth Circuit. The Tenth Circuit affirmed the Tax Court's decision on August 31, 2009. It appears that Springer has appealed that decision to the United States Supreme Court. *See Springer v. Comm'r*, Case No. 09-8701 (U.S. Jan. 21, 2010). It would seem, therefore, that the statute of limitations remains tolled, or suspended pursuant to 26 U.S.C. § 6330(e)(1).

However, the United States maintains that the limitations period tolled from March 15, 2005 to February 12, 2008, which is 90 days after the Tax Court determined, on November 14, 2007, that the IRS could proceed with collections. The United States bases its calculation on 26 U.S.C. §6330(e)(2), which provides that, even if an appeal is pending, the tolling of the period will

discontinue "if the underlying tax liability is not at issue in the appeal and the court determines that the [IRS] has shown good cause not to suspend the levy." *Id.* The underlying liabilities are not at issue in this case because Springer had already challenged the liabilities in 1996 and lost. Also, in deciding Springer's petition arising from the 2005 notice of levy, the Tax Court held in 2007 that the IRS could proceed with the collection of Springer's unpaid federal income taxes and the § 6673 penalty. *Springer v. Comm'r*, No. 17707-06L (T.C. 2007).[7] The Tax Court's 2007 decision is a § 6330(e)(2) court determination that the IRS has shown good cause not to suspend the levy. The United States' calculation of the suspension period as 1,064 days from March 15, 2005 to February 12, 2008, is correct, and the United States had until April 27, 2010 to file this suit.

Springer argues in his reply brief (Doc. 94), that the statute of limitations was tolled from April 10, 2005 (30 days after he received the March 2, 2005 Notice of Levy) through August 16, 2005 (a period of 128 days), when his CDP hearing request was denied and the IRS sustained its decision to levy upon his assets.[8] He contends that, as of August 16, 2005, any tolling was lifted because the IRS determined that the underlying tax liability had already been litigated. This argument overlooks the second requirement of 26 U.S.C. § 6330(e)(2), which provides that the tolling of the period of limitation is lifted if "the *court* determines that the [IRS] has shown good cause not to suspend the levy." 26 U.S.C. § 6330(e)(2) (emphasis added). The limitations period

---

[7] The Tax Court decision is attached to the Strong Declaration, Doc. 158, Ex. 17.

[8] According to this calculation, the period of limitations would have run on October 4, 2007, which is 128 days after May 29, 2007 (ten years after the assessment was made). Springer states in his response to the United States' motion for summary judgment that the United States had until October 27, 2008 to commence any claim they may have had. (Resp. Br., Doc. 164, at 26.) He does not explain how he arrived at that date but, as the United States points out, if that is the date the statute of limitations ran, the May 9, 2008 filing was timely.

was tolled, and the United States' filing of this suit was timely.  Springer's Motion to Dismiss for Statute of Limitations Violations (Doc. 81) should be denied.

## V.     Springer's Motion for Summary Judgment (Doc. 161)

In addition to his arguments regarding the validity of the federal tax liens and the revocation of the certificates of release discussed above, Springer argues that the IRS failed to make a proper assessment against him pursuant to 26 U.S.C. §§ 6201, 6202, and 6203 as well as 26 C.F.R. §§ 301.6203-1, 301.6215-1, and 301-7514.  In particular, he claims that the IRS failed to send him a notice of the assessment and a demand for payment within 60 days after the assessment is made. *See* 26 U.S.C.A. § 6303(a).  A notice of deficiency is valid, even if it is not received by the taxpayer, if it is mailed to the taxpayer's 'last known address.'" 26 U.S.C. § 6212(b)(1); *Gille v. United States*, 33 F.3d 46, 48 (10th Cir. 1994); *Armstrong v. Comm'r*, 15 F.3d 970, 973 (1994); *Guthrie v. Sawyer*, 970 F.2d 733, 737 (10th Cir. 1992).  The last known address is "that address to which the IRS reasonably believes the taxpayer wishes the notice sent," *Gille,* 33 F.3d at 48 (citation omitted).

Springer's contends that his last known address was 5147 S. Harvard, #116, Tulsa, Oklahoma 74135, and that is the address the IRS used when it issued the Notices of Deficiencies. (*See* Reply Br., Doc. 78, Exs. 1, 2.)  However, the IRS sent the April 28, 1999 Notices of Federal Tax Lien to Springer at 5943 E. 13th St., Tulsa, Oklahoma 74112.  (2d Ambuehl Decl., Doc. 76, Ex. A.)[9]  Springer confuses the notice of deficiencies with the notice of federal tax lien and essentially argues that both are invalid because the notice of tax lien was mailed to the wrong address.  He does not dispute that the notices of deficiencies were sent to the correct address, and his argument

---

[9] Springer argues that the March 2, 2005 Notice of Levy shows the 13th Street address; however, the envelope, post-marked March 8, 2009, and March 9, 2009, shows the Harvard Avenue address.  (Reply Br., Doc. 78, Exs. 3, 7.)

regarding the validity of the tax lien notice ignores the notices refiled in June 12, 2007 and on August 4, 2008. It also ignores the fact that Springer filed a request for a CDP hearing after the March 2, 2005 Notice of Levy; he had actual notice.[10]

In fact, Springer acknowledges that he requested a collection due process hearing in connection with the August 4, 2008 filing, and after the IRS denied his request, Springer filed a petition in the United States Tax Court on February 18, 2009, *Springer v. Comm'r*, No. 3781-90L, which remains pending. (See Resp. Br., Doc. 176, at 2; Reply Br., Doc. 165, at 8.) The Tax Court issued an order, dated May 7, 2009, essentially ordering the Commissioner to respond to, among other things, Springer's argument that the IRS did not send the April 29, 1999 CDP lien notice to Springer's last known address. (Reply Br., Doc. 165, Ex. 1.)

The IRS responded, explaining that, as of the time the notice was issued, Springer had last filed a tax return for the taxable year 1989 – some ten years earlier. (*Id.*, Ex. 2, ¶ 3.) The Tax Court has held that a taxpayer's last known address is the address shown on the taxpayer's most recently filed return, absent clear and concise notice of change of address. *See, e.g., Armstrong*, 15 F.3d at 973-74; *Abeles v. Comm'r*, 91 T.C. 1019, 1031 (1988); *Yusko v. Comm'r*, 89 T.C. 806, 808 (1987). The IRS acknowledges that it sent other documents to Springer's Harvard address before 1999, but it could not confirm Springer's "last known address" in 1999 due to the fact that the IRS maintains no electronic record of a taxpayer's former addresses or of the dates on which those addresses change. (*Id.* ¶¶ 10, 12.)

---

[10] *See Mulvania v. Comm'r*, 769 F.2d 1376, 1378 (9th Cir. 1985) (citations omitted) ("[A] notice of deficiency actually, physically received by a taxpayer is valid under § 6212(a) if it is received in sufficient time to permit the taxpayer, without prejudice, to file a petition in the Tax Court even though the notice is erroneously addressed.") The same should be true for a notice of federal tax lien.

The IRS could confirm that the 13th Street address was in the IRS address records as of March 29, 1996, although Springer used the Harvard address for purposes of a lawsuit pending at the time and in correspondence to the IRS in 1995. (*Id.* ¶ 13.) The IRS argues that a taxpayer's use of an address, in correspondence with officials of the IRS, which differs from that on his most recently filed return does not constitute clear and concise notice of a change of address. *See King v. Comm'r*, 857 F.2d 676, 681 (9th Cir. 1988); *Lloyd v. Comm'r*, T.C. Memo 2000-299. Acquisition of a different address by IRS personnel generally fails to constitute adequate notice, especially if the same IRS personnel are not involved in issuing a particular notice. *United States v. Zolla*, 724 F.2d 808, 810-11 (9th Cir. 1984); *Hyler v. Comm'r*, T.C. Memo. 2002-321.

As IRS counsel points out, Springer does not allege that he provided clear and concise notice to the IRS prior to April 29, 1999 of any change of address. Instead, he relies on his use of a different address for purposes of litigation. The use of a different address in litigation does not constitute clear and concise notice of change of address for notice purposes. *See Mollet v. Comm'r*, 82 T.C. 618 (1994). Hence, the IRS may rely on the address shown on the most recently filed return, as reflected in the IRS' electronic records. *See Gille,* 33 F.3d at 47; *Armstrong,* 15 F.3d at 973-74.

Thus, the IRS cannot prove Springer's "last known address" shown in the IRS' records on April 29, 1989, but other documents suggest that it was the 13th Street address since Springer failed to provide clear and concise notice of any change of address. The Tax Court has not yet ruled upon this issue, but this Court finds the explanation by the IRS adequate and the rationale for rejecting Springer's argument with regard to the notice persuasive. Springer's argument that the assessments, as opposed to the tax liens, are invalid because they were not sent to his last known address is not well-grounded: the notices of deficiencies were sent to his correct address. His argument that the

tax liens are invalid is not well-grounded because he failed to provide notice to the IRS of his change of address for purposes of the notices of federal tax liens and, in any event, he had actual notice at least as of March 15, 2005.

Springer also argues that the United States' failure to produce three specific documents warrant judgment in his favor: (1) an actual document specifically purporting to be the May 29, 1997 or April 9, 1998 assessment; (2) a Summary Record of Assessment with supporting documents; and (3) a properly signed Revenue Accounting Control System ("RACS") 006 form dated May 29, 1997 or April 9, 1998. He also argues that the RACS 006 failed to display the seal of the "District Director" in accordance with 26 C.F.R. § 301.7514-1(c),(d) (1994). In *March v. Internal Revenue Serv.*, 335 F.3d 1186 (10th Cir. 2003), the Tenth Circuit remarked that "the IRS need not provide a taxpayer with a copy of the actual Summary Record of Assessment. Instead, the courts have held that the IRS may submit Certificates of Assessments and Payments on Form 4340." *Id.* at 1188. Forms 4340 are certified under seal and, thus, admissible as self-authenticating under Fed. R. Evid. 902(1). *Hughes v. United States*, 953 F.2d 531, 540 (9th Cir. 1992).

The United States has submitted Forms 4340, Certificates of Assessments and Payments, concerning all of Springer's tax liabilities at issue here (Doc. 157, Exs. 3-8) to show that the IRS made a valid assessment. The Forms 4340 state that the IRS sent a "Statutory Notice of Balance Due" on May 29, 1997 regarding Springer's 1990-1995 income tax liabilities and a "Statutory Notice of Balance Due" on April 9, 1998 concerning the 1996 civil tax penalty. The Tenth Circuit has accepted IRS Forms 4340 as presumptive evidence that tax assessments were made in accordance with 26 U.S.C. § 6203. *March*, 335 F.3d at 1188; *Long v. United States*, 972 F.2d 1174, 1181 (10th Cir. 1992); *Guthrie*, 970 F.2d at 737.

Springer does not dispute that the assessment were made, he simply points to perceived procedural irregularities in an attempt to avoid having to pay the taxes he owes. He does not dispute that he received notices of deficiency and notices of intent to levy from the IRS, both of which inform the taxpayer if the amount owed and both demand payment. In fact, he admits to receiving those and litigating the merits in federal court prior to this lawsuit. Springer's arguments as to the validity and effect of the assessments are unavailing. His motion for summary judgment (Doc. 161) should be denied.

## VI.    United States' Motion for Summary Judgment

The United States asserts that tax liens in favor of the United State arose as of the dates of the assessments pursuant to 26 U.S.C. §§ 6321 and 6322 in the amounts of the assessments plus all statutory additions to tax accruing thereon under law. (Am. Compl., Doc. 36, ¶ 43.) Further, the United States maintains that the federal tax liens attached to all property and rights to property then owned or thereafter acquired by Springer, including the property and rights to property belonging to Springer and held by his nominees and/or alter egos. (*Id.*) The United States' first argument in its motion for summary judgment is that the tax assessments made against Springer should be reduced to judgment because res judicata bars him from further challenging the underlying assessments against him, and his actions in requesting a CDP hearing extended the statute of limitations to bring an action seeking to collect the assessed taxes. The United States' second argument is that the Court should order the foreclosure of federal tax liens encumbering Springer's property and interest in property. As the Court has already addressed the statute of limitations issue, it turns now to the United States' res judicata argument.

## A.    Res Judicata

Throughout this his briefing in this lawsuit, Springer has challenged not only the IRS' efforts to collect the  tax assessments at issue, but the merits of the underlying assessments as well.  The doctrine of res judicata prevents parties from re-litigating legal claims that were or could have been the subject of a previously issued final judgment.  *MACTEC, Inc., Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) (citation omitted).  In the tax context, a final decision of the Tax Court is res judicata as to the tax liability determined by that court, and is not subject to collateral attack in a later proceeding.  *See, e.g., United States v. Annis*, 634 F.2d 1270, 1272 (10th Cir. 1980).

As set forth in the allegations and evidence section above, Springer filed a petition in 1996 to challenge notices of  deficiency for 1990-1995.  The Tax Court reached a final judgment on the merits, dismissing Springer's petition for failure to state a claim upon which relief could be granted. The Tenth Circuit dismissed the appeal because he had failed to pay the sanctions assessed against him in a prior case. On May 29, 1997, the IRS assessed Springer for the 1990-1995 income tax liabilities proposed in the notices of deficiency and on April 9, 1998, for the penalty (imposed by the Tax Court) pursuant to 26 U.S.C. § 6673.  The IRS filed a notice of federal tax lien on April 28, 1999, and it sent its notice of intent to levy on March 2, 2005.

Springer filed a request for a CDP hearing, and the IRS sustained its decision to levy upon Springer's assets.  Springer sought judicial review of the IRS' determination in the Western District of Oklahoma.  On August 7, 2006, the Western District of Oklahoma dismissed the  action on the grounds that res judicata barred the action.  The Tenth Circuit affirmed the dismissal of the civil action on May 1, 2007, noting "that res judicata, which we may raise sua sponte, would bar those actions to the extent Springer challenges the fact of his liability for income taxes, interest, and

penalties for 1990-1995." *Springer v. Internal Revenue Serv.*, Case Nos. 05–6387, 06-5123, 06-6268, 2007 WL 1252475 n.5 (10th Cir. May 1, 2007). Springer's petition for a writ of certiorari was denied by the United States Supreme Court on January 14, 2008. To the extent Springer's arguments herein challenge his liability for the taxes assessed, the doctrine of res judicata bars his efforts.

### B.      Foreclosure

A lien on the taxpayer's property and rights to property arises in the United States's favor when the taxpayer is liable for federal taxes and refuses to pay that obligation after demand is made. 26 U.S.C. ¶ 6321. Federal tax liens arise at the time of assessment and continue until the liabilities are satisfied or become unenforceable. 26 U.S.C. ¶ 6322. On May 29, 1997 and April 9, 1998, the dates of the assessments in this matter, federal tax liens arose and attached to all of Springer's property and rights to property.

Section 6321 includes not only any property owned by the delinquent taxpayer but also any property held by a third party if the Court determines that the third party is holding the property as a nominee or alter ego of the delinquent taxpayer. *G.M. Leasing Corp., v. United States*, 429 U.S. 338, 350-51, 97 S.Ct. 619, 627-28, 50 L.Ed.2d 530 (1977); *Holman v. United States*, 505 F.3d 1060, 1065 (10th Cir. 2007). To make that determination, the Court must first look to Oklahoma law to determine if Springer has rights to the subject property and, if so, then to federal law to determine whether those rights qualify as property for purposes of the federal tax lien under 26 U.S.C. § 6321. *Holman*, 505 F.3d at 1067 (quoting *Drye v. United States*, 528 U.S. 49, 588 (1999)).

Under Oklahoma law, a resulting trust can arise when the intent behind the disposition of property or other facts and circumstances create an inference that the beneficial interest does not run

28

with the legal title. *See Boatright v. Perkins*, 894 P.2d 1091, 1093 n. 4 (Okla. 1995). "A resulting trust may be implied or results in favor of the one for whom the equitable interest is assumed to have been intended, and equity deems the intended owner to be the real owner." *Branham v. Smith*, 852 P.2d 761, 763 (Okla. Civ. App. 1992) (citation omitted). The doctrine of resulting trust is codified in Okla. Stat. Ann., tit. 60, § 137. *Boatright*, 894 P.2d at 1094 n. 12; *Ely v. Bowman*, 925 P.2d 567, 573 n. 9 (Okla. Civ. App. 1996). The statute creates a presumption that the payor of consideration for real property intends to retain beneficial interest in the property. Okla. Stat. Ann. tit. 60, §137.

Springer and his ex-wife assumed the mortgage on the subject real property on behalf of the S.L.C.A. Family Trust. However, Springer made all of the mortgage payments until February 2008 with his own funds. (Strong Decl. Doc. 158, Ex. 26, Springer Depo. 16:11 - 18:10.) As discussed below, no payments have been made to any source thereafter. He is the sole source and payor of consideration for the subject property and, clearly, he intended to retain a beneficial interest in the property. Springer has offered no evidence to overcome the statutory presumption under state law except to say that his children are the true beneficial owners. Springer does not dispute that he purchased the property, he improved the property, he maintains the property, and he pays the county taxes assessed on the property with his funds, not funds belonging to his children, his ex-wife, or the S.L.C.A. Family Trust. A resulting trust has arisen here because the intent behind the disposition of the property as well as other facts and circumstances have created an inference that the beneficial interest does not run with the legal title. *See Boatright,* 894 P.2d at 1093 n. 4. The S.L.C.A. Family Trust holds bare legal title in trust for its true beneficial owner, Lindsey K. Springer.

Under federal law, Springer's rights to the subject property qualify as property for purposes of the federal tax lien under 26 U.S.C. § 6321. The Tenth Circuit has relied on the following six factors to consider in whether a nominee lien should be enforced.

> (1) whether inadequate or no consideration was paid by the nominee; (2) whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property; (3) whether there is a close relationship between the nominee and the transferor; (4) whether they failed to record the conveyance; (5) whether the transferor retained possession; and (6) whether the transferor continues to enjoy the benefits of the transferred property.

*Holman*, 505 F.3d 1065 n. 1 (quoting *Spotts v. United States*, 429 F.3d 248, 253 n. 2 (6th Cir. 2005). Since Springer and Carlson initially bought the subject property in the name of the S.LC.A. Family Trust, Springer is not a "transferor" as referenced in the *Spotts* factors. Nonetheless, the applicable factors weigh in favor of enforcing the nominee lien against Springer, the delinquent taxpayer. No consideration has been paid for the property by the S.LC.A. Family Trust; instead, Springer has paid on the mortgage. Springer has a close relationship with the nominee as co-trustee with his ex-wife. He has retained possession of it and continues to reside on it and enjoy the benefits of ownership. Even without analysis of the *Spotts* factors, the Tenth Circuit "has recognized that a tax lien may be enforced when the taxpayer has never held legal title to the property but has directed that title be placed in a third party's name." *Holman*, 505 F.3d at 1065 (citing *United States v. Miller Bros. Const. Co.*, 505 F.2d 1031, 1036 (10th Cir. 1974)).

Springer never held legal title to the subject property, but he has directed that title be placed in the name of the S.L.C.A. Family Trust. Thus, the S.L.C.A. Family Trust is Springer's nominee, and the federal tax liens encumbering Springer's property and interest in property may be enforced. The United States seeks a judicial foreclosure, which requires the Court to make a determination regarding the priority of the United States and the mortgagors. *See* 26 U.S.C. § 7403. The United

30

States concedes that the W.T. Smith, Janeth S. Smith, and Martha F. Moore, individually and as trustee of the W.T. Moore and Martha F. Moore Revocable Trust dated June 12, 2002, have priority over the federal tax liens at issue.

## VII. Springer's Motion to Dismiss Cross-Claims (Doc. 121) and Motion for Summary Judgment by Cross Claimants Against S.L.C.A. Family Trust (Doc. 153)

Springer seeks to dismiss the cross-claims of Martha F. Moore, individually and as trustee of the W.T. Moore and Martha F. Moore Revocable Trust dated June 12, 2002 and W.T. Smith and Janeth S. Smith ("Cross-Claimants"). As set forth above, the Cross-Claimants seek a judgment for unpaid principal and interest accrued and accruing on the promissory note and mortgage, plus attorney fees, court costs and other expenses. (Cross-Claim, Doc. 93, ¶ 10.) They also seek foreclosure and sale of the real property at interest and a determination that their claims and rights have priority over the claims of the United States in this matter. (*Id.* at 6.)

Springer claims that the cross-claims should be dismissed based on Fed. R. Civ. P. 12b)(1),(2),(3),(4),(5), and (6). He specifically argues that a cross-claim should not be permitted because it is not a responsive pleading permitted by Fed. R. Civ. P. 7. As the Cross-Claimants point out, cross-claims are permitted pursuant to Fed. R. Civ. P. 13(g). Springer made the same argument in a Motion to Strike, filed February 17, 2009 (Doc. 120). The Court denied the motion by opinion and order dated February 27, 2009 (Doc. 137.)

Springer also argues that he has not been served with the cross-claim pursuant to the procedures set forth in Fed. R. Civ. P. 4. Rule 4 provides for service of a summons with a copy of the complaint in an action. It is not relevant to the service of a cross-claim. A cross-claim may be served pursuant to the procedures outlined in Fed. R. Civ. P. 5, and the certificate of service set forth at the end of the cross-claim indicates that proper service was made.

Springer's argument regarding venue is similarly frivolous. He states that the venue is improper because the agreement at issue belongs in state court. This argument ignores the fact that the case was properly brought by the United States in federal court, and Fed. R. Civ. P. 13(g) permits a cross-claim.

> if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The cross-claim may include a claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

*Id.*

As to the merits of the cross-claim, Springer asserts that he has paid the Cross-Claimants in full. The Cross-Claimants assert that the original promissory note and mortgage in this matter called for amortized payments calculated on a 15-year payment schedule with payments at $360.06 per month, including principal and interest, with a balloon provision requiring that the remaining principal balance be paid in full on April 15, 2001, after 84 payments (7 years). (Cross-Claim, Doc. 93, ¶ 2.) When S.L.C.A. Family Trust acquired the property, it assumed this mortgage. (*Id.* ¶ 4.)

The Cross-Claimants contend that, when the balloon payment under the note and mortgage came due on April 15, 2001, they agreed with S.L.C.A. Family Trust, through its co-trustee Lindsey K. Springer, to waive the obligation to pay in full the principal balance owing on April 15, 2001, and to allow monthly payments to continue according to the 15-year amortized payment schedule. (*Id.* ¶ 7.) Apparently, the agreement was oral, as the Cross-Claimants have submitted no written document memorializing the agreement. Cross-Claimants submit, instead, the affidavit of W.T. Smith. (Mot. Summ. J., Doc. 153, Ex. 1.)

W. T. Smith affies that the beginning principal balance owed under the promissory note was $30,000.00.  (*Id.* ¶ 4.)  On April 15, 2001, the final payment of $22,289.00 was due under the balloon provisions of the promissory note, and payments had been made only though the payment due on December 15, 2000.  (*Id.* ¶ 9.)  Springer contacted W.T. Smith, who discussed the situation with Janeth S. Smith, W.T. Moore and they agreed to give the S.L.C.A. Family Trust the option to continue to make the monthly payments under the full 15-year amortization schedule until the balance owing was paid off.  (*Id.*)  Springer accepted that option, and payments on the promissory note were made to the Moores and Smiths through First United Bank.  (*Id.* ¶ 10.)  Smith attached copies of credit memoranda showing that payments were made from May 2001 through February 2008. (*Id.*, Ex. 6.)  Springer discontinued payments after February, 2008.  (Cross-Claim, Doc. 93, ¶ 8.)

> Springer claims that
>
> [n]either Moores or Smiths can point to any agreement by Springer to pay them 12% interest on the remaining balance.  Springer only agreed to pay 2% over prime.  Springer agreed to continue to make the same monthly payments till the balance was paid in full.  A proper calculation of the amount owed as of April 15, 2001, along with 2% over prime will show that Springer owes no money to cross claimants.

(Mot. to Dismiss, Doc. 121, at 5.)  He does not submit said calculation, and the credit memoranda show that he continued to pay the $360.06 for each month between May 2001 through February 2008.  (Mot. Summ. J., Doc. 154, Ex. 7.)  The credit memorandum dated February 11, 2008 shows a balance due of $4,677.93.  (*Id.*)

While neither the Cross-Claimants nor Springer cite to any legal authority on this issue, basic principles of contract law dictate that Springer's course of performance  after the oral modification to the parties' agreement bind the S.L.C.A. Family Trust to the terms described by W.T. Smith.  *See,*

*e.g.*, John D. Calamari and Joseph M. Perillo, *The Law of Contracts*, §§ 3.17, 5.11, 11.32, 19.37, 19.45 (4th ed. 1998). In Oklahoma, "[w]hen parties orally agree to an alteration of a contract, and such contract, as amended, is fully carried out, this constitutes, as to such amended matters, an executed contract." *Allen Farms, Inc. v. Broce Const. Co., Inc.*, 2006 OK CIV APP 36 ¶ 13, 134 P.3d 852, 855 (Okla. Civ. App. 2005) (quoting *Kenison v. Baldwin*, 1960 OK 93, ¶ 0(1), 351 P.2d 307); *see* Okla. Stat. tit. 15, § 237 ("A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."); *see also Archer v. Osage Fed. Sav. & Loan Ass'n of Pawhuska*, 1941 OK 50, 112 P.2d 162, 165 (Okla. 1941) (written directions for the application of montly payments in a note and mortgage were subject to modification and alteration by a subsequent oral agreement that was fully executed). The Cross-Claimants are entitled to the relief requested in their Motion for Summary Judgment (Doc. 153); Springer's Motion to Dismiss Cross-Claims (Doc. 121) is denied.

## VIII.   Motions for Injunctive Relief

While Springer's motions for injunctive relief would appear moot, based on the Court's decision to grant judgment in favor of the United States and the Cross-Claimants, the Court addresses them briefly because the issues relevant to each may arise on appeal. On November 16, 2008, Springer moved to enjoin the United States' claims based on his request for a CDP hearing following the United States' issuance, on August 4, 2008, of the notice of federal tax lien concerning the same tax liabilities that were the subject of the notice of federal tax lien issued on April 29, 1999. (See Springer's Mot. to Enjoin, Doc. 57.) Springer relies on 26 U.S.C. § 6330(e)(1) which provides, in relevant part, that "the beginning of a levy or proceeding during the time the suspension under this paragraph is in force ay be enjoined by a proceeding in the proper court, including the Tax

Court." *Id.* A hearing request suspends levy actions for the periods during which the hearing, and appeals therein, are pending. *Id.*

The United States argues, in response to the motion, that Springer was not entitled to a hearing on his request following the August 4, 2008 notice because he had failed to request a hearing after the issuance of the April 28, 1999 notice. (See Resp. Br., Doc. 75, at 3-4.) The United States also argues that Springer was not in the proper court to invoke § 6330(e)(1), as the Tax Court is the only proper court to which Springer could appeal the denial of a request for hearing. *(Id.*, at 5-6.) Finally, the United States argues that Springer had not demonstrated that he was entitled to an injunction.

The issue of whether Springer was entitled to a hearing is currently pending in the Tax Court. *See Springer v. Comm'r*, No. 3781-90L (T.C.). However, the Tax Court has already held that the IRS could proceed with the collection of Springer's unpaid federal income taxes and the § 6673 penalty. *Springer v. Comm'r*, No. 17707 -06L (T.C. 2007). Thus, application of 26 U.S.C. § 6330(e)(2) prevents the application of § 6330(e)(1) because the underlying tax liability is not at issue in the appeal and the IRS has shown good cause not to suspend the levy." 26 U.S.C. § 6330(e)(2). Springer's Motion to Enjoin under 27 U.S.C. § 6330(e) (Doc. 57) should be denied.

On November 24, 2009, Defendant filed an "Emergency Motion to Enjoin Under 26 U.S.C. § 6330(e) and for Temporary Restraining Order" (Doc. 172).[11] The motion is similar to a Motion for Temporary Expedited Restraining Order (Doc. 97) filed by Springer on February 2, 2009, wherein Springer set forth the procedural history of this case and reargued his asserted grounds for

---

[11]Five days later Springer submitted a 25-page "supplement" to the motion in which he argues, or reargues, seven "issues presented." (See Supp. Br., Doc. 174.)

dismissal of the claims filed against him by the United States. The Court denied that motion by Order dated February 27, 2009 (Doc. 137). The November motion is based on attempts by IRS agents to levy upon Springer's online PayPal account and a checking account. Springer requests that the Court require IRS agents to return the amounts taken and to refrain from levying upon any of his assets until the outcome of this case and a case pending in Tax Court.

The Court opted not to hold an "emergency" hearing on the November motion, as it deemed a decision on the dispositive motions imminent, and saw no material facts in dispute. *See Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) ("If the party requesting the preliminary injunction cannot show that factual disputes exist regarding the required elements, and cannot introduce evidence sufficient to justify granting the motion, a hearing on the requested injunctive relief is unnecessary."); *Bors. v. Allen*, 607 F.Supp. 2d 204, 207 n.2 (D.D.C. 2009) ("A court may deny a plaintiff's application for a preliminary injunction without first providing a hearing on the merits when the record demonstrates a lack of right to relief.") (citations omitted).

The United States argued that the commencement of this action does not prevent the IRS from seeking to collect on other assets from Springer to pay his tax liabilities during the pendency of this judicial lien-foreclosure action and, furthermore, the Tax Anti-Injunction Act (26 U.S.C. § 7421) prohibits Springer's motion. The Internal Revenue Code provides that the IRS may levy upon any property and rights to property (except for property exempted by 26 U.S.C. § 6334) if a taxpayer neglects or refuses to pay any tax after notice and demand. 26 U.S.C. § 6331(a). The purpose of the levy is to provide for the prompt and inexpensive collection of revenue and to prevent the loss or diversion of the taxpayer's assets while any competing claims to such assets are being resolved. *See United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 721, 105 S.Ct. 2919, 2924, 86 L.Ed.2d

565 (1985). Because the funds in Springer's PayPal and checking accounts are liquid and could be easily diverted or lost, it was appropriate for the IRS to levy those assets. If it is determined that the IRS did not have a valid assessment or lien against him, then Springer has potential remedies to recover the levied funds. *See* 26 U.S.C. § 7422.

More important, the Tax Anti Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). The statute reflects long-standing Congressional policy that permits "the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). The Court may issue an injunction against the IRS only if: 1) the government cannot prevail on the merits of its tax claim under the most liberal view of the law and facts and 2) the taxpayer has no adequate remedy at law and will be irreparably harmed if the injunction is not granted. *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 737, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974) (citing *Enochs*, 370 U.S. at 6-7, 82 S.Ct. at 1128-29). Springer did not prove either of these elements. His "Emergency Motion to Enjoin Under 26 U.S.C. § 6330(e) and for Temporary Restraining Order" (Docs. 172, 173) is denied.

## IX.    Summary and Conclusion

The beneficial owner of the subject property herein is the defendant, Lindsey K. Springer, although it is nominally held in the name of the S.L.C.A. Family Trust. Defendants W.T. Smith, Janeth S. Smith, and Martha F. Moore, individually and as trustee of the W.T. Moore and Martha F. Moore Revocable Trust dated June 12, 2002, have priority over the federal tax liens at issue, and

foreclosure of the liens is warranted. As discussed above, the liens and the revocations of the lien releases are valid, and the United States filed its claims within the applicable statute of limitations. The federal income tax assessments were properly made by the IRS, and any argument by Springer as to the merits of the underlying assessments is barred by the doctrine of res judicata.

Accordingly, "Springer's Motion to Enjoin under 27 U.S.C. §6330(e)" (a motion for permanent injunction) (Doc. 57) is DENIED; "Springer's First Amended Motion to Dismiss Amended Complaint" (Doc. 64) is DENIED; the "Motion to Dismiss for Statute of Limitations Violations" (Doc. 81) filed by Springer is DENIED; Springer's "Motion to Dismiss" (the cross-claims) (Doc. 121) is DENIED; the Motion for Summary Judgment by Cross Claimants Against S.L.C.A. Family Trust (Doc. 153) is GRANTED; the United States' Motion for Summary Judgment (Doc. 154) is GRANTED; the Motion for Summary Judgment (Doc. 161) (filed by Springer) is DENIED; and Springer's Emergency Motion to Enjoin Under 26 U.S.C. §6330(e) and for Temporary Restraining Order, which was filed by the Court Clerk as two separate documents, a motion for temporary restraining order (Doc. 172) and a motion for preliminary injunction (Doc. 173), is DENIED.

The United States and the Cross-Claimants are hereby directed to submit proposed forms of Judgment, Notices of Foreclosure and Orders of Sale to enforce the Judgment no later than March 12, 2010.

**IT IS SO ORDERED** this 3rd day of March, 2010.

**TERENCE KERN**
**United States District Judge**