IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

Plaintiff,

Case No. 08-CV-278-TCK-PJC

v.

Lindsey K. Springer, et al.,

Defendants.

SPRINGER'S MOTION AND BRIEF FOR STAY OF FINAL JUDGMENT
PENDING APPEAL

Lindsey K. Springer and his nominee, SLCA Family Trust ("Springer"), by limited special

appearance, and not a general appearance, moves this Article III inferior Court created by Congress,

for an order staying execution of its final judgment dated March 16, 2010 pending de novo review

by the United States Court of Appeals for the Tenth Circuit. Notice of Appeal was docketed on

March 16, 2010.   See F.R.A.P. 8.  A Brief in Support of this Motion follows herein:

Table of Contents

page #

1.  JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.  SPRINGER IS LIKELY TO PREVAIL ON THE MERITS ON APPEAL . . . . . . . . . . . . 1

   A.  THERE HAS BEEN NO ANSWER FILED IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . 2

   B.  THIS COURT LACKED ANY EVIDENCE IT HAS ANY JURISDICTION UNDER TITLE
       26 TO RENDER ANY JUDGMENT IN FAVOR OF THE SECRETARY OF THE
       TREASURY AS A PARTY WITH STANDING OR CASE OR CONTROVERSY   . . . 3

   C.  SPRINGER DEMANDS A JURY TRIAL AND NOT A JUDGE OPINION ON EVERY
       FACT IN DISPUTE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   D.  THE COURT IS IN ERROR WITH REGARD TO THE LAST KNOWN ADDRESS
       FINDING OF FACT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

-i-

E.  REVOCATION OF CERTIFICATE OF RELEASE WAS ERRONEOUSLY ISSUED
    ALONG WITH NEW LIEN NOTICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

F.  THERE IS NO EVIDENCE OF ANY VALID 4340S IN THE RECORD OF THIS CASE
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

G.  THE COURT REFERENCES "IRS" 102 TIMES AND DOES NOT IDENTIFY HOW THIS
    "IRS" LEGALLY EXIST IN OKLAHOMA UNDER 26 CFR 601.101(2008) . . . . . . . 11

H.  LIEN RELEASE WAS VALID DURING 10 YEAR EXPIRATION LIMITATION AND NO
    AUTHORIZED PERSON REVOKED SAME OR ISSUED ANOTHER . . . . . . . . . . 12

I.  SLCA FAMILY TRUST WAS NOT PURCHASED OR OWNED BY LINDSEY
    SPRINGER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

3.  IRREPARABLE HARM ABSENT A STAY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

4.  OTHER PARTIES WILL NOT BE SUBSTANTIALLY HARMED BY THE ENTRY OF
    STAY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

5.  THE PUBLIC INTEREST FAVORS A STAY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

6.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Table of Authorities*

Cases

*Allnutt v. C.I.R.*, 523 F.3d 406, 414 (fn. 1)(4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Baltimore & Carolina Line, Inc. v. Redman,* 295 U.S. 654, 657,[fn7] . . . . . . . . . . . . . . . . . . . . 8

*Damsky v. Zavatt,* 289 F.2d 46 (2d Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Dominion Video v. Echostar*, 356 F.3d 1256, 1262 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . 17

*Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) . . . . . . . . . . . . . . . 16

*(Table Authorities Cont)*                                    page #

*Farmers-Peoples Bank v. United States,* 477 F.2d 752, 756-57 (6th Cir.) . . . . . . . . . . . . . . . . 8

*Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 370 (10th Cir. 1989) . . . . . . . . . . 3

*Greater Yellowstone Coalition v. Flowers,* 321 F.3d 1250, 1258 (10th Cir. 2003) . . . . . . . . . 16

*Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987) . . . . . . . 1

*Hughes v. United States*, 953 F.2d 531, 536, 542 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . 2,6

*Miller v. Standard Nut Margarine Co.*, 284 U.S. 498, 509 (1931) . . . . . . . . . . . . . . . . . . . . . . . 18

*Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 (10th Cir.2005) . . . . . . . . . . . . . 16

*Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729 . . . . . . . . . . . . . . . . . . . . 8

*United States v. Anderson*, 584 F.2d 369, 373 (10th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . 1,7

*United States v. Biglow*, 562 F.3d 1272, 1275 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Land in Muskogee*, 74 F.3d 197, 198 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . 1

*United States v. McMahan,* 569 F.2d 889, 891 (5th Cir.) (en banc) . . . . . . . . . . . . . . . . . . . . . 8

*United States v. U.S. Dist. Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) . . 17

*Wyoming Trucking Assn. v. Bentsen*, 82 F.3d 930, 933 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . 18

STATUTES

      Title 4, United States Code, Section 72 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      Title 26, United States Code, Section 6201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      Title 26, United States Code, Section 6203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

-iii-

*(Statutes Cont'd)*                                                    page #

Title 26, United States Code, Section 6301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Title 26, United States Code, Section 6320 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Title 26, United States Code, Section 6321 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Title 26, United States Code, Section 6323 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Title 26, United States Code, Section 6325 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Title 26, United States Code, Section 6331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Title 26, United States Code, Section 7401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5,14

Title 26, United States Code, Section 7403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5

Title 26, United States Code, Section 7621 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Title 26, United States Code, Section 7701(a)(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Title 26, United States Code, Section 7701(a)(12) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Title 26, United States Code, Section 7801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 31, United States Code, Section 301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

REGULATIONS

26 CFR § 301.7401–1 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

26 CFR § 601.101(a) (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

26 CFR § 301.7701–9 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

26 CFR § 301.7701–10 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*(Regulations Cont'd)*               page #

26 CFR § 301.6326-1 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

26 CFR 301.6301 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## CONSTITUTION

Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16,17

Fifth Amendent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,16

## RULES

Federal Rules Criminal Procedure 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Federal Rules Criminal Procedure 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Federal Rules Criminal Procedure 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Rules Criminal Procedure 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Federal Rules Criminal Procedure 38 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,8

10th. Cir. Rule 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## MISC

Internal Revenue Bulletin 2007-36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## BRIEF IN SUPPORT OF MOTION

Springer must show that: (1) he is likely to prevail on the merits on appeal; (2) he will be irreparably harmed in the absence of a stay; (3) other parties will not be substantially harmed by the entry of a stay; and (4) the public interest favors a stay. *See Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987); *see also* 10th Cir.R. 8.1. *U.S. v. Land in Muskogee*, 74 F.3d 197, 198 (10th Cir. 1996)

## 1. JURISDICTION

Springer filed his notice of appeal on March 16, 2010. This Court has jurisdiction to issue a stay of its order and final judgment pending appeal.

## 2. SPRINGER IS LIKELY TO PREVAIL ON THE MERITS ON APPEAL.

The procedures followed by this Court in this case are clearly in opposition to the Federal Rules of Civil Procedures and Federal Law. (A) Springer cannot find a single case where a case decided by so many facts was decided without any answer being filed post dispositive motion denial. Such procedure was uncalled for. (B) There is absolutely no jurisdiction for this Court to enter its order as no authorization under either Title 26, Section 7401 or 7403 exists in the facts and law of this case. (C) This Court has denied Springer a jury trial on all facts in violation of the Seventh Amendment and the 10th Circuit holding in *United States v. Anderson*, 584 F.2d 369, 373 (10th Cir. 1978). This Court's order violates the most basic tenant of due process under the Fifth Amendment. Springer had a right to demand and have a jury trial once his dismissal requests were denied but has been obviously denied that right by the Court's order. (D) Springer has been denied his right to file a counter claim in this case regarding the procedures obviously and intentionally ignored by the United States of America under Fed.R.Civ.Pr. 13. Clearly there is no address or last known address

on the 4340s or any other document.   The Court's order is silent on this issue.  (E) The Revocation of Certificate of Release was not only unauthorized to be issued but was issued erroneously.   The Court's order ignores this disputed fact.   The August 4, 2008 new tax lien was erroneously issued by someone other than a delegate of the Secretary of the Treasury and district director as required by *Hughes v. U.S.*, 953 F.2d 531, 536, 542 (9th Cir. 1992), a decision the Court relies upon without explaining how.   There are no internal revenue districts or district directors since at least 2000 making any act by anyone outside the District of Columbia prohibited by Title 4, Section 72.   There are no internal revenue districts under Title 26, Section 7621.  There is no authority to issue any lien or levy by any delegate with a delegation of authority outside the District of Columbia.  The Court's order remains silent and does not address how a 4340 or notice of lien can be issued by someone not authorized by law to make such statements.  A notice of deficiency is not an assessment.  (F)   There is no doubt notice of the "assessment" which is required for a lien to arise has not appeared in the record of this case with any evidence it was sent to Springer at his last known address.  The 4340's are not singed by an authorized person.   (G)   The Court uses the term "IRS" 102 times and not one time identifies who the "IRS" is.  Springer gave the Court ample evidence there exists no IRS outside the District of Columbia as a matter of fact and law since at least 2000 in the words of the Secretary of the Treasury and the Court order refused to address this in any detail whatsoever. (H) Statute of limitations expired during the time lien release was  of record in the office of the Secretary and new lien was not issued by any authorized delegate of the Secretary.  The USA continually argued a lien and notice of lien are not the same thing. (I) SLCA Family Trust was not ever owned by Springer and this finding completely erroneous.

A.    THERE HAS BEEN NO ANSWER FILED IN THIS CASE

There is no doubt that prior to being required to file an answer Springer moved to dismiss the complaint filed in this case as he had a right to do. Doc. 10 and 11. Equally there is no doubt Springer moved to amend his Motion to Dismiss and this Court granted that motion. Doc. 13 and 14. Springer again moved to dismiss the amended complaint. Doc. 58 and 59. Those Motions were apparently and vaguely ruled upon on March 3, 2010. Doc. 179.

Apparently this Court determined that rule 7, 8 and 38 of the Federal Rules of Civil Procedure do not apply to Springer in this case. This Court previously ruled that a motion to dismiss was not a pleading. Doc. 60 ("As to Springer's Motion to Dismiss, the Court finds that such motion is moot based on the United States' filing of an Amended Complaint. Contrary to Springer's arguments, the United States did not need leave of Court to file its Amended Complaint because the Motion to Dismiss filed by Springer is not a "responsive pleading" for purposes of Federal Rule of Civil Procedure 15(a)(1)(A). *See Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 370 (10th Cir. 1989).")

Springer's first pre-answer motion to dismiss was mooted by the amended complaint. This Court then granted Springer an extension of time to file an "answer" which is a "pleading" or otherwise raise any pre answer motions allowed. Springer did that by again moving to dismiss.

Now the Court has determined all the facts over Springer's objection and somehow concluded it could grant summary judgment in favor of the Plaintiff not withstanding Fed. R.Civ.Pr. 7, 8 and 38 and close the case in Plaintiff's favor finding no facts are in dispute. As this Court recognizes there are many cases Springer has defended against Plaintiff and when a Motion to Dismiss is denied an answer is required to be filed within a time set by the Court. That would be

called a pleading.

There are several reasons why answers are required to be filed once pre-answer motion to dismisses are denied and just one of which is a request for a jury trial request. If this Court intended to find no facts are in dispute between the parties then Springer objects to that erroneous finding and demands a jury trial.

Springer is likely to prevail on this issue.

B.   THIS COURT LACKED ANY EVIDENCE IT HAS ANY JURISDICTION UNDER TITLE 26 TO RENDER ANY JUDGMENT IN FAVOR OF THE SECRETARY OF THE TREASURY AS A PARTY WITH STANDING OR CASE OR CONTROVERSY.

In Springer's answer he would deny the allegation in paragraph 2 which alleges:[1]

2. This civil action is commenced at the request of, and with the authorization of, the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and at the direction of the Attorney General of the United States, pursuant to sections 7401 and 7403 of the Internal Revenue Code of 1986 (26 U.S.C.) ("IRC").

Springer even raised objection to this jurisdiction in his Motion to Dismiss and Motion for Summary Judgment. Springer also pointed out in his pre-answer Motion for Injunction that there could be no authority given by the Secretary to Elizabeth Downs as suggested in a carefully redacted purported "authorization" letter presented by Plaintiff's counsel in Plaintiff's counsel's declaration which was the sole basis to support this Court having jurisdiction triggered by Title 26, Section 7401 or 7403.

Section 7401 reads as follows:

_____

[1]Springer would also request a jury trial in this "pleading."

**No civil action** for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced.

Section 7403 provides:

In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability. For purposes of the preceding sentence, any acceleration of payment under section 6166 (g) shall be treated as a neglect to pay tax.

There are no delegations of authority from the Secretary of the Treasury to Elizabeth Downs.[2]

## 26 CFR § 301.7401–1 Authorization states:

(a) *In general.* **No civil action for the collection** or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Commissioner (or the Director, Alcohol, Tobacco and Firearms Division, with respect to the provisions of subtitle E of the Code), or the Chief Counsel for the Internal Revenue Service or his delegate authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced.

Ms. Downs is not "Chief Counsel" and no evidence says otherwise. The "Chief Counsel" is in the "Department of the Treasury." See Title 26, Section 7803(b). The Commissioner of the Internal Revenue is also in the Department of Treasury. See Title 26, Section 7803(a)(1). The Commissioner is employed with only those "duties" as the "Secretary may prescribe." See Title 26, Section 7803(a)(2). The Secretary of the Treasury receives his power and office at Title 31, Section

---

[2]Or anyone else named and appearing in some document in this case.

301(a)("The Department of the Treasury is an executive department of the United States Government **at the seat of the Government**.") This section goes on to provide that "(b) The head of the Department is the Secretary of the Treasury. The Secretary is appointed by the President, by and with the advice and consent of the Senate."

Congress places the Secretary of the Treasury with the powers and duties of enforcement of Title 26. See Title 26, Section 7801. Title 4, Section 72 provides that "All offices attached to the seat of government shall be exercised in the District of Columbia, and not elsewhere, except as otherwise expressly provided by law."

In *Hughes v. U.S.*, 953 F.2d 531, 536 (9th Cir. 1992) the 9th Circuit held that "The taxes imposed by the internal revenue laws shall be collected by district directors of internal revenue." 26 C.F.R. § 301.6301-1. District directors in turn are authorized to redelegate the levy power to lower level officials such as collection officers." Also, the *Hughes* Panel held that Title 4, Section 72 "does not foreclose the exercise of authority by the IRS outside the District of Columbia" only when the President establishes "internal revenue districts for the purpose of administering the internal revenue laws" outside D.C. and pursuant to Title 26 U.S.C. § 7621. *Hughes v. U.S.*, 953 F.2d at 542

All Internal Revenue Districts and District Directors positions were abolished in 1999 or early 2000 and no one disputes this fact. If it is disputed then a jury should be the finder of fact on this issue. "The District Director's Office, **now defunct**, was responsible for the administration of all IRS operations within a given tax district." *Allnutt v. C.I.R.*, 523 F.3d 406, 414 (fn. 1)(4th Cir. 2008)[3] This finding was in April, 2008, just a month before Plaintiff commenced the action herein.

---

[3]For calender year 1997. Interestingly, *Allnutt* delivered his return to district counsel and not the district director and was found not to have tendered or filed his return by the 4th Circuit

See also Internal Revenue Bulletin 2007-36 ("The offices of the district director and Special Procedures were eliminated by the IRS reorganization...") at pg. 536[4]  If this Court persists in denying Springer's Motion in this regard then Springer requests this Court make a record concluding that "internal revenue districts", including such district encompassing the State of Oklahoma and this Court, no longer exists and has not existed since at least 1999-2000 by all accounts.

Springer denies any evidence exists or has been presented authorizing Plaintiff's counsel to bring this action outside the District of Columbia pursuant to any law of the United States either in the record of this case or in any regulation or delegation from the Secretary of the Treasury to anyone whatsoever.   There is no question this case is brought outside the District of Columbia.

Springer is likely to prevail on this issue.

C.   SPRINGER DEMANDS A JURY TRIAL AND NOT A JUDGE OPINION ON EVERY FACT IN DISPUTE.

There have been no pleadings filed in this case as of yet by Springer as this Court denied several pre-answer motions pending for more than a year and then ruled in Plaintiff's favor.   "The question is whether trial by jury may be had as a matter of right in an action brought by the Government for collection or recovery of taxes under 26 U.S.C. § 7401." *United States v. Anderson*, 584 F.2d 369, 373 (10th Cir. 1978)[5]

---

because it was not delivered to the proper place.  There is no district director office or internal revenue district since at least 1999.

[4]Springer tendered hard copy of this Bulletin to the Court at its request and Plaintiff does not dispute this fact.

[5]If the Court wishes Springer not have any rights in Federal Court, or that federal laws and their words somehow do not include Springer, then why does the Court persist in furthering Plaintiff's declaration of war upon Springer?

In an action similar to the one herein, the Tenth Circuit was "persuaded by the scholarly opinion of Judge Friendly in *Damsky v. Zavatt,* 289 F.2d 46 (2d Cir.)[fn6] to hold that there is a right to jury trial in such a case. See also *United States v. McMahan,* 569 F.2d 889, 891 (5th Cir.) (en banc); *Farmers-Peoples Bank v. United States,* 477 F.2d 752, 756-57 (6th Cir.). The right to trial by jury preserved by the Seventh Amendment is the right which existed under the English common law when the Amendment was adopted. *Baltimore & Carolina Line, Inc. v. Redman,* 295 U.S. 654, 657, 55 S.Ct. 890, 79 L.Ed. 1636.[fn7] Rule 38(a), F.R.Civ.P., provides that the right "as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." The Seventh Amendment question turns on the nature of the issue to be tried rather than the character of the overall action. *Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729. And the inquiry involves considering the pre-merger custom, the remedy sought, and the practical abilities and limitations of juries. Id. at 538 n. 10, 90 S.Ct. 733. "In sum, we are persuaded that defendant Anderson's demand for a jury trial was timely. This action for collection of taxes comes within the Seventh Amendment, and the Code in no way attempts to curtail the right. The defendant is therefore entitled to have the case tried to a jury." Anderson, *supra*

Rule 38 of the Federal Rules of Civil Procedure leaves no doubt that the time to seek a jury trial is 10 days from the last pleading.[6]

Springer is likely to prevail on this issue.

D.   THE COURT IS IN ERROR WITH REGARD TO THE LAST KNOWN ADDRESS FINDING OF FACT.

---

[6]Springer could never have filed a pleading or invoked the within 10 days as this Court on March 3, 2010 granted motions by the USA and denied same by Springer and then on the 9th calender day granted judgment in favor of the USA on March 16, 2010.

In its order the Court stated the following:

"Springer confuses the notice of deficiencies with the notice of federal tax lien and essentially argues that both are invalid because the notice of tax lien was mailed to the wrong address. He does not dispute that the notices of deficiencies were **sent to the correct address**, and his regarding the validity of the tax lien notice ignores the notices refiled in June 12, 2007 and on August 4, 2008. It also ignores the fact that Springer filed a request for a CDP hearing after the March 2, 2005 Notice of Levy; he had actual notice."

The Court has confused a Notice of Lien which it found dated April 28, 1999 with a notice of levy which was originally sent to the wrong address. The Court also confused a Notice of Deficiency governed by a statute with another statute which governs how liens arise as a matter of law. There was nothing in the Notice of Levy dated March 2, 2005, which was subsequently mailed to Springer at his "last know address" on March 8, 2005, at the demand of Springer, that regards "the validity of the tax lien notice" refiled in June of 2007 or August of 2008.

The Court makes a startling argument that Springer "had actual notice" of something but stops short of saying notice of what.

A notice of lien is required under a separate code section, see Title 26, Section 6323 and the lien itself arises under Title 26, Section 6321. A notice of levy arises under Title 26, Section 6331 while both a notice of lien and notice of levy independently require notice to Springer at his last know address for the Secretary of the Treasury to even begin to proceed with collection. Springer was also required to receive a notice and demand for payment before a lien arises as a matter of law. Apparently the Court has decided the notice of demand was dated March 8, 2005[7] while the lien arose as a matter of law prior to April 28, 1999. That reasoning is simply illogical.

---

[7]It is unclear by the Court's order whether it believes the notice and demand was the notice of deficiency itself. In any event, the Court's order has turned federal law into common law with no rime or reason behind its meaning. That simply cannot be the law of this land.

These are administrative issues and not challenges to the tax liability itself. This Court's order is unclear as to what the "last known address" of Springer it found to be. Is it 5147 S. Harvard, # 116 which is the address on the Notice of Deficiency and the March 8, 2005 "envelope" or is it 5943 E. 13th St which is the address on the Notice of Lien the Plaintiff submitted with Mr. Ambuel's second declaration? The order simply does not say.

The Notice of Deficiency the Court acknowledges is dated September 3, 1996. The Court identifies the Notice of Lien as beginning dated April 28, 1999. The Court recognizes the address in 1996 is different than the address in 1999. Yet the Court does not identify how the 1996 address changed by 1999. In fact, the Court resorts back to 1989 with no evidence whatsoever to suggest that the 1999 address was ok because prior to the 1996 address the 1989 address was the same as the 1999 address. All this without any citation in the record or any authority in support. This is why we have jury trials. The USA tendered no evidence Springer ever used 5943 E. 13th St. as an address to say or do anything personally with the Secretary of the Treasury.

A Jury should determine what Springer's last know address was as of April 28, 1999.

Springer is likely to prevail on this issue.

E. REVOCATION OF CERTIFICATE OF RELEASE WAS ERRONEOUSLY ISSUED ALONG WITH NEW LIEN NOTICE.

This Court places much reliance upon the declaration of Ms. Wiedemann to conclude a determination the year old certificates of release were issued erroneously and that the August 4, 2008 Notice of Liens were issues properly along with the revocation of Certificate of Release.

Ms. Wiedemann makes no declaration that she was authorized to act on behalf of the Secretary of the Treasury in this case and the Court order identifies no such authority. What

authority would a person in Ohio have to issue a Notice of Tax Lien in Oklahoma for the Secretary? Plaintiff identifies none and the Court order points to no such statute, regulation or other theory.

Ms. Norman, the issuer of the Notice of Lien on August 4, 2008, equally had no authority to sign her name to any Notice of Federal Tax Lien on behalf of the Secretary. She was not the Secretary of the Treasury and she was not a delegate of the District Director for the Internal Revenue District named "Arkansas-Oklahoma."

A jury trial on every fact surrounding the release, revocation and new lien should be tried.

Springer is likely to prevail on this issue.

F.   THERE IS NO EVIDENCE OF ANY VALID 4340S IN THE RECORD OF THIS CASE.

Springer pointed to several errors in the purported 4340s including the fact that the purported 4340s tendered by Plaintiff do not comply with the Tenth Circuit's requirement that they contain the same information that a RACS 006 contain. One of those elements missing was the "address" on the 4340s. This was carefully removed from the 4340's or the computer which generated them. This Court error includes that it found Springer did not dispute and did receive the "assessments" when there is no record to support this finding of fact.

Springer is likely to prevail on this issue.

G.   THE COURT REFERENCES "IRS" 102 TIMES AND DOES NOT IDENTIFY HOW THIS "IRS" LEGALLY EXIST IN OKLAHOMA UNDER 26 CFR 601.101(2008).

Springer realizes the Court does not wish to address who the IRS is within the State of Oklahoma. Nonetheless, the Court references this thing it avoids addressing 102 times in its 38 page order dated March 3, 2010.

26 CFR 601.101(a) *General.* "The Internal Revenue Service is a bureau of the Department

of the Treasury under the immediate with direction of the Commissioner of Internal Revenue. The Commissioner has general superintendence of the assessment and collection of all taxes imposed by any law providing internal revenue. The Internal Revenue Service is the agency by which these functions are performed. **Within an internal revenue district the internal revenue laws are administered by a district director of internal revenue**." See April 1, 2008 Edition.

The Court mentions IRS 102 times but ignores Springer's demands that Plaintiff demonstrate it is authorized to represent the Secretary of the Treasury or his delegate. In this case, the secretary or delegate must show their office is authorized by law to be exercised outside D.C. That they have not done and this Court has not found otherwise.

There is no evidence before this Court that Elizabeth Downs is a delegate of the Secretary of the Treasury or that Robert D. Metcalfe of James C. Strong were authorized to bring their out of time and stale May 9, 2008 complaint.[8]

Springer is likely to prevail on this issue.

H.    LIEN RELEASE WAS VALID DURING 10 YEAR EXPIRATION LIMITATION AND NO AUTHORIZED PERSON REVOKED SAME OR ISSUED ANOTHER.

The purported[9] lien "arose" as of May, 1997. On August 23, 2007 the Secretary of the Treasury issued a Certificate of Release of all Liens in its records and purportedly mailed same to Springer. That Springer did not get this release until July, 2008 does not matter for this issue. The USA argued under Title 26, Section 6325(e)(2) that the "Secretary" had determined the Certificate

---

[8]They had not even checked the computer system to see the liens were in fact released.

[9]No evidence where this "assessment" or "notice and demand" were sent to Springer and this Court overlooks that statutory violation in the record including in the 4340s which were not authorized by the Secretary or his delegate.

of Release was "issued erroneously or improvidently." The only evidence of this determination was in a declaration by two people. Kim Norman and Janice Wiedemann. Neither were found by this Court to be the "Secretary" or "Secretary of the Treasury." Springer argued they were not the Secretary. In fact, there is not a single declaration or affidavit or other evidence of any delegate of the Secretary of Treasury saying or doing anything in this case. There most certainly is no declaration of the Secretary of the Treasury or his delegate nor could there be.

Title 26, Section 7701(a)(11) and (12) control the meaning of Secretary. Secretary means Secretary of the Treasury or his delegate. Secretary of Treasury excludes any delegate. Delegate means any person "authorized" by the Secretary of the Treasury directly or indirectly by one or more redelegations of authority to perform the functions mentioned.

The applicable corresponding regulation is found at 26 CFR **§ 301.7701–9 "Secretary or his delegate" and states:**

(a) The term *Secretary or his delegate* means the Secretary of the Treasury, or any officer, employee, or agency of **Internal Revenue Service,** the Treasury Department duly **authorized by the Secretary** (directly, or indirectly by one or more redelegations of authority) to perform the function mentioned or described in the context, and the term ''or his delegate'' when used in connection with any other official of the United States shall be similarly construed.

(b) In any case in which a function is vested by the Internal Revenue Code of 1954 or any other statute in the Secretary or his delegate, and ***Treasury regulations or Treasury decisions approved by the Secretary or his delegate provide that such function may be performed by the Commissioner, assistant commissioner, regional commissioner, assistant regional commissioner, district director, director of a regional service center, or by a designated officer or employee in the office of any such officer***, such provision in the regulations or Treasury decision shall constitute a delegation by the Secretary of the authority to perform such function to the designated officer or employee. If such authority is delegated to any officer or employee performing services under the supervision and control of the Commissioner, such provision in the regulations or Treasury decision shall constitute a delegation by the Secretary to the Commissioner of the authority to perform such

function and a redelegation thereof by the Commissioner to the designated officer or employee.

(c) An officer or employee, including the Commissioner, ***authorized by regulations or Treasury decision to perform a function shall have authority to redelegate the performance of such function to any officer or employee performing services under his supervision and control***, unless such power to so redelegate **is prohibited or restricted by proper order or directive**. The Commissioner may also redelegate authority to perform such function to other officers or employees under his supervision and control and, to the extent he deems proper, may authorize further redelegation of such authority.

(d) The Commissioner may prescribe such limitations as he deems proper on the extent to which any officer or employee under his supervision and control shall perform any such function, but, in the case of an officer or employee designated in regulations or Treasury decision as authorized to perform such function, such limitations shall not render invalid any performance by such officer or employee of the function which, except for such limitations, **such officer or employee is authorized to perform by such regulations or Treasury decision in effect at the time the function is performed**.

And under 26 CFR **§ 301.7701–10 "District director" is defined as:**

The term *district director* means the district director of internal revenue for an internal revenue district. The term also includes the Assistant Commissioner (International).

Neither the USA or the Court identified any regulation or decision which allows Elizabeth Downs to act on behalf of the Secretary of the Treasury pursuant to Title 26, Section 7401[10] or the Attorney General equally and simultaneously. Springer knows of none.

The USA did not tender a shred of any evidence making Wiedemann or Norman a delegate

---

[10](a) *In general.* No civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Commissioner (or the Director, Alcohol, Tobacco and Firearms Division, with respect to the provisions of subtitle E of the Code), or the Chief Counsel for the Internal Revenue Service or his delegate authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced.

of the District Director or Secretary of the Treasury for the internal revenue district encompassing Oklahoma. Springer knows of none in existence.

If the Court is mindful to deny Springer's stay request in this regard Springer would request the Court set forth what regulations and delegations of authority the Court found Downs, Wiedemann and Norman, were each found to have supporting the claims made by the USA regarding authority to bring the complaint, amended complaint, and revoking the certificate of release and issuance of the new notice of tax lien in August, 2008. This way Springer can inform the 10th Circuit as to this Court's disposition on these very important issues in this case.

26 CFR § 301.6326-1 (2008) provides the answer:

(a) *In general.* Any person may **appeal to the district director of the district in which a notice of federal tax lien was filed on the property or rights to property of such person for a release of lien alleging an error in the filing of notice of lien**. Such appeal may be used only for the purpose of correcting the erroneous filing of a notice of lien, not to challenge the underlying deficiency that led to the imposition of a lien. If the district director determines that the Internal Revenue Service has erroneously filed the notice of any federal tax lien, the district director shall expeditiously, and, to the extent practicable, within 14 days after such determination, issue a certificate of release of lien. The certificate of release of such lien shall include a statement that the filing of notice of lien was erroneous.

There is no doubt the certificate of release was not revoked by anyone authorized by law. Equally there is no doubt that new tax lien was not issued by the Secretary.

What is astonishing to Springer is that the Court would allow the USA to prevail jurisdictionally where no such authority exists as a matter of law.

Springer is likely to prevail on this issue.

I. SLCA FAMILY TRUST WAS NOT PURCHASED OR OWNED BY LINDSEY SPRINGER

The Court makes findings of fact in dispute that a jury should have been allowed to decide. It is true that Lindsey Springer used the property and was required to maintain the property but that does not mean under Oklahoma Law this Court can ignore the fact that Springer did not "own" the property. Originally the United States claims Springer fraudulently conveyed the property to SLCA. Obviously there is no such evidence it was every conveyed. The Court even acknowledges Springer is not the beneficiary. Springer using and having to maintain the property does not equate to owning the property. A jury should have decided this fact in dispute.

Springer is likely to prevail on this issue.

3.     IRREPARABLE HARM ABSENT A STAY

This Court has ordered Springer to vacate the home he lives in along with the rest of his family within 30 days. Springer and his wife and children have lived in the home for 14 years. The Fifth Amendment guarantees a person shall not be deprived of property without due process of law. The District Court order and judgment does not come even close to providing due process. The Seventh Amendment equally has been violated in depriving Springer of a jury trial on each issue of disputed fact which relates back to due process. No amount of denomination in U.S. currency debt will ever replace the home and the security the Fourth Amendment places upon that home for Springer and his family. There is no evidence the United States would have the ability to satisfy Springer and the monetary loss sustained based upon the current economic disaster appearing before the country and Springer. Springer has been in one case for over four years simply demanding $2,000 stolen be returned to him and the United States (same attorneys in this case) have somehow found a way to maintain such deprivation and that deprivation continues. "[L]oss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable

injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). "We therefore assume that plaintiffs have suffered irreparable injury when a government deprives plaintiffs of their commercial speech rights." *Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 (10th Cir. 2005)

"Determining whether irreparable harm exists can be a difficult and close question. We have noted that '[t]he concept of irreparable harm . . . `does not readily lend itself to definition," *Prairie Band of* Potawatomi Indians, 253 F.3d at 1250 (citation omitted), nor is it "an easy burden to fulfill." *Greater Yellowstone Coalition v. Flowers,* 321 F.3d 1250, 1258 (10th Cir. 2003). "In defining the contours of irreparable harm, case law indicates that the injury 'must be both certain and great, and that it must not be merely serious or substantial.' *Prairie Band of Potawatomi Indians,* 253 F.3d at 1250" See *Dominion Video v. Echostar*, 356 F.3d 1256, 1262 (10th Cir. 2004)

Indeed, the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) See also *United States v. Biglow*, 562 F.3d 1272, 1275 (10th Cir. 2009)  If entry of the home is the chief evil then removing a person from his home for ever would be an even greater evil when the law forbids it.   Removing Springer and his family from their home qualifies as irreparable injury.

Springer will suffer irreparable damage if the stay is not granted.

4.      OTHER PARTIES WILL NOT BE SUBSTANTIALLY HARMED BY THE ENTRY OF STAY

There is no question the United States of America would not be "substantially" harmed by a stay pending appeal.   This case has drug on for almost two years and there is serious doubt as to

whether the United States of America even has standing to bring the complaint and amended complaint in the first place. There is no District Director, no Internal Revenue District, no evidence of notice and demand for payment prior to the claimed lien arising, no evidence of any assessment, no evidence of any delegation of authority for Ms. Downs, Ms. Wiedemann or Ms. Norman to take the acts they took which this Court has relied upon erroneously.

The United States of America waited from 1998 till 2008 to bring this action so them arguing somehow they will be damaged in any way if this stay is granted is simply more erroneousness. The Moors or their trust will also not be damaged by the stay.

Both the United States of America and all other parties have no interest in an order and judgement that is erroneously issued by the Court with reversible error. The Moores were in major default and if not for this Court abusing its discretion they would have no interest in the outcome of this case anyway. There is no evidence a jury could consider that the action brought by the United States of America was authorized to be brought.

Also, the lien interest of the Secretary of the Treasury was certified released on August 23, 2007 and noone authorized to speak on behalf of the Secretary of Treasury, as a designate, has revoked that release.

Since no party will suffer substantial harm the stay should be granted.

5.    THE PUBLIC INTEREST FAVORS A STAY

This case was brought against Springer because he would not agree to settle 06-156 currently pending on appeal by the Bivens Defendants as Springer prevailed thus far in that case. There was no lien pending on file that any 4340s could be based upon at the time the complaint was filed. There is no assessment, no record, no notice and demand, no lien, and no valid notice of lien in the

record of this case. In the absence of any District Director and Internal Revenue Districts as well as any delegation of authority, the public's interest is seeing that all administrative laws have been complied with and met. They have not.

There exists a "broad prohibition of judicial impediment to taxation" however, this prohibition should not "be interpreted to give the Government carte blanche in the creation or assessment of taxes." *Wyoming Trucking Assn. v. Bentsen*, 82 F.3d 930, 933 (10th Cir. 1996) Such omnipotence would potentially allow the government to work all manner of legal deprivation under the guise of its power to tax. See *Miller v. Standard Nut Margarine Co.*, 284 U.S. 498, 509, 52 S.Ct. 260, 263, 76 L.Ed. 422 (1931).

The public interest is in seeing sections 6201, 6203, 6301, 6321, 6323, 6325, 6320, 6330, 6331, 7401, 7403, 7701(a)(11) and (12) and their regulations being complied with the Secretary of the Treasury. The only person authorized to "collect" any taxes is the Secretary of the Treasury. In 26 CFR 301.6301 (2008) the Secretary of the Treasury places the collection of "all" taxes in "District Directors" hands and no one else. This Court was made aware of this fact and refused to address it in its order and judgment. There is not a single bit of evidence any authorized District Director has done anything related to the case brought against Springer. Now the Court has ordered collection knowing the will of Congress is being ignored by the Court, Secretary of the Treasury and Department of Justice. Where possibly does this Court believe such lawless behavior will lead?

The public's interest is in having people not steal when they erroneously search Springer's home with a defective warrant. The public's interest is in having Certificate's of Release to be reliably issued. The public's interest is in making certain releases are only revoked when authorized by and according to law and not men. The public's interest is in seeing Springer received a jury trial

on all disputed facts. The public's interest is in knowing due process has not become no due process.

Springer understands the rationale as to why Judges wish to find facts to sentence in criminal offense type cases as the Supreme Court is clearly divided on that subject. However, they are not divided on whether Springer had a right to a jury trial in this case.

Lastly, the public interest is in seeing the last known address of Springer be used when the Secretary of the Treasury claims he properly notified of Springer of his notice and demand before the "lien arose."

The public interest is in favor of a Stay.

## CONCLUSION

Lindsey K. Springer requests this Court to issue an order staying its order and judgment of March 16, 2010 pending de novo review by the United States Court of Appeals for the Tenth Circuit for the reasons that the procedures followed by this Court in this case are clearly in opposition to the Federal Rules of Civil Procedures and Federal Law and that:

(A) Springer cannot find a single case where a case decided by so many facts was decided without any answer being filed post dispositive motion denial. Such procedure was uncalled for.

(B) There is absolutely no jurisdiction for this Court to enter its order as no authorization under either Title 26, Section 7401 or 7403 exists in the facts and law of this case.

(C) This Court has denied Springer a jury trial on all facts in violation of the Seventh Amendment and the 10th Circuit holding in *United States v. Anderson*, 584 F.2d 369, 373 (10th Cir. 1978). This

Court's order violates the most basic tenant of due process under the Fifth Amendment. Springer had a right to demand and have a jury trial once his dismissal requests were denied but has been obviously denied that right by the Court's order.

(D) Springer has been denied his right to file a counter claim in this case regarding the procedures obviously and intentionally ignored by the United States of America under Fed.R.Civ.Pr. 13. Clearly there is no address or last known address on the 4340s or any other document. The Court's order is silent on this issue.

(E) The Revocation of Certificate of Release was not only unauthorized to be issued but was issued erroneously. The Court's order ignores this disputed fact. The August 4, 2008 new tax lien was erroneously issued by someone other than a delegate of the Secretary of the Treasury and district director as required by *Hughes v. U.S.*, 953 F.2d 531, 536, 542 (9th Cir. 1992), a decision the Court relies upon without explaining how. There are no internal revenue districts or district directors since at least 2000 making any act by anyone outside the District of Columbia prohibited by Title 4, Section 72. There are no internal revenue districts under Title 26, Section 7621. There is no authority to issue any lien or levy by any delegate with a delegation of authority outside the District of Columbia. The Court's order remains silent and does not address how a 4340 or notice of lien can be issued by someone not authorized by law to make such statements. A notice of deficiency is not an assessment.

(F)    There is no doubt notice of the "assessment" which is required for a lien to arise has not

appeared in the record of this case with any evidence it was sent to Springer at his last known address.  The 4340's are not singed by an authorized person.

(G)    The Court uses the term "IRS" 102 times and not one time identifies who the "IRS" is. Springer gave the Court ample evidence there exists no IRS outside the District of Columbia as a matter of fact and law since at least 2000 in the words of the Secretary of the Treasury and the Court order refused to address this in any detail whatsoever.

(H) Statute of limitations expired during the time lien release was  of record in the office of the Secretary and new lien was not issued by any authorized delegate of the Secretary.  The USA continually argued a lien and notice of lien are not the same thing.

(I) SLCA Family Trust was not ever owned by Springer and this finding completely erroneous.

Respectfully Submitted

/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Springer's Motion for Stay pending Appeal

was mailed electronically (ECF) where denoted and by carrier otherwise on March 19, 2010:


By ECF:

Robert D. Metcalfe
James Clive Strong
Allen Mitchell

Otherwise, on March 19, 2010:


Ms. Regina M. Carlson, Individually and
as Co-Trustee of the S.L.C.A. Family Trust
1003 Westland Road
Sapulpa, Oklahoma 74066

/s/ Lindsey K. Springer
Signature