In the United States District Court
For The Northern District of Oklahoma

United States of
America

v.

Lindsey K. Springer, et al

08-CV-278-TCK

**FILED**

SEP 20 2010

Phil Lombardi, Clerk
U.S. DISTRICT COURT

### Lindsey K. Springer's Response in opposition to "Moore Trust and W. Smith and, Janeth S. Smith" Motion For Attorney Fees, Claim and Costs.

Lindsey K. Springer individually and as co-Trustee of the SLCA Family Trust ("Springer" and "SLCA" respectively) files his response in opposition To The "Moore Trust" ("moores") and W. T. Smith and Janeth S. Smith ("Smiths") Motion For Attorney Fees (collectively, "Movants")

### I. Opposition to Introductory Statement.

Springer and SLCA ("defendants") have tried everyway possible to have those tax laws allegedly sought to be "enforced" to be enforced as they are written and interpreted by the Secretary of the Treasury, through rules and regulations published in the Federal Register, and according to Tenth Circuit and Supreme Court published decisions.

Without in depth explanation, Springer identifies those laws at issue and not addressed by the 39 page order on appeal to the Tenth Circuit and to which defendants have requested reversal in 10-5037. In Exhibit 7, pg 1 of 4, Counsel for Movants contends he was told

1

by the Tenth Circuit some time after August 21, 2010, that since the Movants are not "parties" to defendants appeal that no brief schedule for Movants is ordered.

This case has been plagued from the beginning with multiple errors being made by Counsel for movants over and over again. These will be addressed below.

This Court has bent the law and rules backwards to cover or protect Movants while defendants have sought protection under the laws and procedures receiving none of the safe guards due process demands and that Congress mandated.

Counsel for movants once again is asking this Court to not only ignore the rules of this Court with respect to "attorney's fees" and "costs" but is asking this Court to reward counsel or reimburse Movants for their counsels charges. Defendant hopes this Court decides enough is enough and denies Movants Motion (which in reality is Counsels Motion) and way out of Time.

    A. The laws at issue.

        (i) Statutes.

This case begins with Title 26, United States Code ("IRC") and it's enforcement. The begining was triggered by IRC § 6211, 6212, and 6213. These are the Notice of Deficiency procedures when the Secretary determines a tax liability is due and owing by a person subject to the IRC. See IRC § 7701(a)(11)

The office of the Secretary is created by Congress at Title 31, United States Code,

§ 301 only in the District of Columbia, The seat of Government is identified by Congress at Title 4, United Stats Code ("USC") § 71.

Title 4, USC § 72 prohibits the office of the Secretary of The Treasury, or any variation there of, from exercising his or her office outside the District of Columbia "unless expressly provided by law." Hughes v. United States, 953 F.2d 531, 542 (9th Cir. 1992 This Court cited Hughes for authority on form 4340s, See Doc 179, pg 25

Hughes also explains how the Secretary of the Treasury, IRC § 7701(a)(11) acts through "delegates" IRC § 7701(a)(12), and that all collection of taxes outside the District of Columbia, is to collected, IRC § 6301, by District Directors. 953 F.2d at 536. (See also 26 CFR § 301.6301 (2008-2010) discussed in the next subsection)

IRC § 6020(b) directs the Secretary of the Treasury or his delegate (by inference) to issue Notice of deficiencies.

IRC § 6213 provides Defendants with a right to oppose the claims made by the District Director.

If a "individual" IRC § 7701(a)(1) loses and that decision becomes "final", IRC § 6215, the Secretary of the Treasury is authorized to issue an "assessment." See IRC § 6201, 6202, and 6203. The method used is to be determined by regulations properly published by the Secretary of the Treasury. See Taylor v. IRS, 69 F.3d 411, 419 (10th Cir. 1995); March v. IRS, 335 F.3d 1186, 1188 (10th Cir. 2003); Guthrie v. Sawyer, 970 F.2d 733, 735 (10th Cir. 1992)

IRC § 6325(f) only authorizes the Secretary to revoke a lien release,

3.

are Binding on the Government (which includes the United States District Court) as well as the person subject to the IRC, "Tax Officials and Taxpayers alike are under the law, not above it." United States v. Brafman 384 F. 2d 863, 866 (5th Cir. 1966)

Once the Secretary of the Treasury records the "assessment" of a tax liability in his office, he must mail to the person liable notice and demand for payment within 60 day, IRC § 6303(a)

Once the Secretary can show the demand for payment was sent to the persons last known address, and the taxpayer can be shown to have refused to pay, a lien arises as a matter of Federal Law. IRC § 6321

"Last know address" is defined by the Tenth Circuit because Congress nor the Secretary of the Treasury have defined it, billie v. United States, 33 F. 3d 46, 48 (10th Cir 1994); Guthrie, 970 F. 2d at 737; Armstrong v. Comm'r, 15 F. 3d 970, 973 (10th Cir 1994); Doc. 179, pg 22.

IRC § 6323 allows then, and only then, for a Notice of Lien to be filed by the Secretary of the Treasury in certain places prescribed by law.

An assessment can only be pursued for 10 years. IRC § 6502, Doc. 179, pg 19

Congress did not create the Internal Revenue Service. The Secretary of the Treasury created the Internal Revenue Service ("IRS") by his authority at IRC § 7805, Snyder v. IRS, 590 F. Supp. 240, 247 (1984) The office of Commissioner is found at IRC § 7801

Congress directs the President to establish Internal Revenue Districts

Previously called "collection" Districts. IRC § 7621 (a). The President is to give the public notice of those boundaries. IRC § 7621 (b). See Hughes, 953 F. 2d at 542. IRC § 7401 prohibits jurisdiction without authorization from the Secretary.

(ii) Regulations

There are many statutes that use terms or phrases which Congress did not define. "Gift", "income", "last know address", "assessment", "return", "Internal Revenue District" are just a small set of examples of such words or phrases not defined.

Under certain statutes Congress directs the Secretary to, by regulation, implement a statutory scheme. See IRC § 6011, 6091, 6203 as examples.

This caused two types of Regulations to appear. Interpretive and Substantive.

Interpretive are just that, Interpreting a statute without specific authority.

Substantive means according to a statutory command.

These can be divided up into those that apply to the Secretary, or his agency, or to the individual. Together these make up "due process."

No person can be deprived of his property by the United States without due process. according to the Fifth Amendment.

Some statutes have corresponding regulations while others do not.

Defendants cite those regulations for demonstrating the law according to the Secretary of the Treasury.

Keeping in mind the Secretary cannot

enforce the IRC outside the District
of Columbia, except or unless provided
by law, the Secretary of the Treasury
pursuant to his substantive and interpretive
regulatory authority, created the IRS.
   Title 26 Code of Federal Regulation
("CFR") § 601.101 state that the
Commissioner (§7801) is head of the IRS
which is in the District of Columbia.
   Section 601.101 further states that
it is through District Directors of each
Internal Revenue District that internal
revenue laws are administered or enforced.
   By Executive order the President delegated
to the Secretary of the Treasury to create
Internal Revenue Districts as authorized
by IRC § 7621. See 26 CFR§301.7621-1
The State of Oklahoma is not within
an Internal Revenue District since
calender year 2000 began. See Allnutt
v. CIR, 523 F.3d 406, 408-414 (F.N.1) (4th Cir.
2008)
   All Notice of Deficiencies issued outside
the District of Columbia, are only authorized
to be issued by The District Director over
that directors Internal Revenue District.
See 26 CFR§301.6212
   All assessments must be issued by a
person authorized by the District Director
over that directors' Internal Revenue District
or the director of the service center over
that specific Internal Revenue District.
See 26 CFR§301.6203-1; §301.6215
   All Federal Tax Liens arising as a
matter of Federal Law must arise through
District Directors. See 26 CFR§301.6321.
   All Notice of Federal Tax Liens only
arise by and through District Directors.

All collection of Federal Taxes outside the District of Columbia is by law only authorized to be enforced by the District Director of the Internal Revenue District in which collection is sought. See 26 CFR § 301.6301

All Sale of seized or Court ordered taken realestate is to be received, marketed, noticed for sale, sold, and collected by the District Director over the Internal Revenue District which is located therein the realestate being sold for collection of Taxes. See 26 CFR § 301.6335, 301.7501, 301.7505, 301.7506.

All offices of District Director, or any office authorized by law, must have an official Seal. See 26 CFR § 301.7514-1

The Secretary of The Treasury defines "Secretary" at 26 CFR § 301.7701-9 to include District Directors.

The Secretary of the Treasury defines "District Director" to be the director over a specific Internal Revenue District. See 26 CFR § 301.7701-10.

## II   Jurisdiction

The amended complaint alleges that a delegate of the Secretary of the Treasury "authorized" the complaint pursuant to IRC § 7401 and 7403. A comp. @ p22, para. 2

Thus, Jurisdiction over the amended complaint purportedly "is conferred upon this Court by virtue of 28 U.S.C. §§ 1340 and 1345, and IRC § 7402."

Although defendants were never allowed to "answer" the complaint due to the

defects to Jurisdiction raised pre answer,
Movants' seek attorney fees based upon
an "assumption agreement" dated July
29, 1996, that ties in the "terms of a
certain Real Estate Purchase Agreement
dated the 14th day of June, 1996, between
Mortgagor and Grantee." Movants Exh. 3 pg 1.
   The "assumption agreement" was made
pursuant to S.L.C.A. Family Trust dated
March 18, 1994. "Movant's (Exh. 3. pg. 1.
   SLCA assumed "the payment of the
Mortgaged Indebtedness." Movant's Exh 3, pg 1.
   The assumption agreement it was agreed
could not be "changed, altered, waived,
amended, discharged or terminated orally,
but only by an instrument reduced to
writing, signed by all parties hereto." Movants
Exh. 3. pg 2, para 7
   The Court Order dated March 3, 2010, decided
even though no case from the Tenth Circuit
supported the Government theory of ownership,
and that Springer was not a "transferor"
in Spotts v. United States, 429 F.3d 248, 253
n.2 (6th Cir. 2005), which is a "footnote"
from the 6th Circuit, a Federal tax lien
encumbers Springers "interest in property."
Doc. 179, pg 30.
   Movants' interest has priority over the
federal tax liens at issue. Doc 179, pg 30
Movants' are now asking this Court to order
Springer be liable to Movants for their
attorney fees their attorney has charged
them for acts he took for the United
States and others, purportedly due to their
mortgage interest in the property being
subject to foreclosure by
   This Court lacks jurisdiction to

order Springer owes any attorney fees or cost to Movants. Springer has filed a motion to dismiss for lack of Jurisdiction simultaneously ~~No delegate of the Secretary authorized the Complaint.~~

III Movants Claims
(A) Moores Claims.

The "Moores and Smith" respectfully request that the Court award $35,411.16 to Moore and Smith which amount represents "their reasonable attorney's fees and expenses incurred in this litigation and obtaining judgment against Lindsey Springer." Motion at 1.

The only "Granted" Movants received from This Court is a Joint Motion For Summary Judgment "against S.L.C.A. Family Trust." Doc. 179, pg. 38". The Court identifies this in its order as "(Doc. 153)".

The Movants' "unpaid mortgage against the real property with interest through August 15, 2010, is calculated to be $6,368.96." The present motion is not addressing the propriety of Movants' Mortgage interest in the subject to Foreclosure property.

It becomes obvious this Court has Stretched the reach of Federal Law to such extreme that now Movants request For Attorney fees needs this Court to hold Springer personally liable for the Greenaw's Mortgage, purportedly owing $4,800 plus 1% interest a month since February, 2008.

Movants' claim for Attorney Fees shows Moores and Smiths are three separate parties and not one party. Their attorney Claims are meritless.

The Moore Trust is one Party and

both Smiths equal Two Parties, Their Joint
Motion overlooks This undeniable truth.
Counsel For Moore Trust states under
oath:

> "I supervised the preparation of the
> Mortgage assumption agreement by
> which Springer assumed the mortgage
> and received title to real property
> which is the Subject of the litigation
> In this case."

See Exh. 6. This is same for Smith and will be
expressed separately and is Jointly,
   This Court never found Springer
assumed the Mortgage or was personally
liable for the Mortgage. Only SLCA
was held liable and the "assumption
agreement" forbids any changes with
Springer's signed agreement. See Exh 3, pg 2, para 7.
   Moore confuses "enforcing a nominee lien"
with "enforcing a mortgage assumption agreement."
   This Court's order stated that a "resulting
Trust may be implied or results in favor
of the one for whom the equitable interest
is assumed to have been intended, and
equity deems the intended owner to be
the real owner." Doc. 179, pg. 29.
   This, albeit erroneous conclusion, relies
on "equity" and the "source and payor of
consideration for the subject property." Id.
   The Moore claim is derived from
an alleged amount of a mortgage not
yet paid, which is not equity, while the
alleged interest of the District Director
that does not exist, as an office, the USA
claims has an interest in the money or

equity from money already paid by SLCA toward the assumption agreement.

Moore's claim clearly and only derives from the Real Estate Mortgage with Power of Sale between the Moore Trust, both Smiths, and William D. Greenhaw and Linda F. Greenhaw, Exh. 2 (the "Greenhaws")

Moore does not attach or assert the June 14, 1996 "purchase agreement" as to how SLCA is liable for costs associated with foreclosure, Exh 3, pg 1

Moore's Judgment is not a "Foreclosure". Therefore, nothing in the assumption agreement make SLCA or Springer liable for attorney fees to Moore for "its protected by first mortgage lien on the property known as:

"The North Half,.... State of Oklahoma." Exh. 3, pg 1

Despite this undeniable truth, counsel for Moore claims he has charged Moore Trust, at least half of the $35,411.16 or $17,706.00 to recover on a secured mortgage, as of June 15, 2008, Moore's half of $4,867.88 or a total of $2,433.00 alleged owed by SLCA and first in line on property worth substantially more. See Exh. 5. Defendant contended no debt was owed.

Although Counsel has been practicing since 1968, and defendants do not doubt he is an excellent attorney, the lawsuit by the United States of America does not trigger, or put at risk, Moore's secured and undeniable mortgage in the above described property.

Whatever, there is no way to hold Springer

liable under the Contracts and agreements in evidence as attached by Exhibit.

Under the rule of law this issue would never have even came up. Interesting, we have no Internal Revenue District, no District Director, but the "IRS" somehow without any lawful structure, exists, and SLCA is a resulting Trust for Springer as far as Federal Tax Liens are applicable to property SLCA obviously owned.

The Jurisdiction of this Court is founded upon, albeit in error, IRC § 7401, 7402, and 7403.

Defendants' contend the Secretary of the Treasury did not authorize this action and Section 7401 forbids jurisdiction.

This Court has no jurisdiction to consider Moore's Attorney's outlandish claim for fees and cost against Springer or SLCA.

(B) Smiths' Claims

There is no way to determine the claims for attorney fees by the Smiths distinguished from those for Moores.

Defendant incorporates by reference the argument and opposition by defendants in regard to the Moore's Attorney's Fee Claims with the Smiths' Attorney Fee Claims.

Springer is not liable for any Mortgage alleged owed. Judgment is only against SLCA to secure first in line over the property.

Counsel for Smiths errantly states this Court has held Springer liable to Movants. This is not correct.

As Movant's Exhibit 4 clearly states SLCA only agreed to "assume and pay the balance" of a Mortgage between Moores, Smiths, and Greenhaws. That ended 4.15.01. The Warranty Deed makes one exception:

"Set back lines, zoning ordinances, and outstanding minerals, if any, of record."

There was no statement of "The Surface and surface rights only" as in the "Real Estate Mortgage with Power of Sale." Compare Exhibit 2 with Exhibit 4.

Mr. Mitchell testifies he supervised the preparation of the mortgage assumption agreement. Exh. 6 pg 1

Mr. Mitchell states he filed a "cross claim against "Springer." Exh. 6, pg 3. Defendants contend they were never served with that Cross or Counter Claim against Springer.

Mr. Mitchell contends he has charged the Smiths $180.00 per hour as his usual and customary rate. Exh. 6, pg 2

The amended complaint, doc 36, alleges Moore and Smiths have a legal interest in the property. Doc. 36, p2

The foreclosure however is sought by the Government against Springer. Not Moore or the Smiths

In addition to those oppositions defendants incorporate from Section "III (A)" above regarding Moore herein, defendants claim This Court lacks jurisdiction to grant attorney fees to Moore or Smiths against Springer based upon the "Real Estate Mortgage with Power of Sale." The assumption agreement forbids it.

## IV   Counsel's Performance

The billing records Mr. Mitchell attaches to his Motion, Exh. 8 as sworn to by his affidavit, show Counsel worked for the United States Government and not the Moores or Smiths regarding a purported Mortgage.

As of June 11, 2008, Counsel was charging Moores and Smiths to "review waiver of service forms." However, Smiths and Moore had already received "lawsuit material received by Smith and Moore." Exh. 8, pg 1. Metcalfe contended no waiver had been received as of July 22, 2008, Exh. 8, pg 1. On July 31, 2008, executed another set of waivers. Exh 8, pg 1, yet, when did the first set get sent? "Early July, 2008." Id. Again, Counsel say's he sent documents but Metcalf did not have them. Exh. 8, pg 1 Letter to Clients on Government interest, Exh. 8, pg 1, Letter to Clerk to "establish account" Exh. 8, pg. 2 Conference with "Fred Rice" to discuss status of case against Springer. Id. Reviewed fax about testifying for the Government. Id. A "1.2" hour letter to Moores and Smiths on "litigation," Trial testimony, Id. Provide documents to U.S. Attorney and speak with Fred Rice on phone. Id. Letter on Trial Testimony.

There is not a single entry by Counsel until November 24, 2008 that even touches the surface of Moore or Smith's interest in the property sought by the Amended Complaint.

Counsel's first 31.3 hours may have been the costs of Moores and Smiths testifying or defending claims the Government was erroneously making against them, but defendants are not liable to Moore or Smiths for these claims.

Defendants claim there is no time claimed by Counsel on page 3 that has anything to do with any rights conveyed to Smiths or Moore in <u>Exhibit 2, 3, or 4</u>. What Counsel did for Moore or Smiths to defend against the Government claims against them is not the liability of Springer or SLCA. What Counsel did as a cooperating witness for the Government also is not the liability of Springer or SLCA. None of these times were necessary to secure payment on a mortgage owed by SLCA to either Moore or Smith.

The Court doesn't even say what is owed by SLCA to each of the Four Grantors.

Counsel even seeks to be paid by Defendants, and billed his clients for not being aware of Federal Rules when his pleadings were "stricken". Exh 8, pg 4. And to pay him to research why. Id. Redraft Answer to USA Complaint. Id. There is nothing on page 4 of the billing that was necessary for Moore and Smiths to defend each of their apprx. $1,250.00 interest in a mortgage Secured First by the Subject property.

Redraft cross claim, change answers again, Call to clerk because Computer was not working, review motions on protective order, hearing, a 50 minute call about using Mitchell's office, save review of Docs. 120, 121, are all not connected to Moore and Smiths Mortgage security.

The reason for the Second set of Depositions on Moore and Smith was because Counsel, cooperating with the USA, took depositions without Springer being notified. Defendants concede .6 on page 5 could be necessary, but not by Springer.

Defendants object as to page 4 and 5

15.

except .6 on February 17, 2009 and not to Springer.

Page 6, of Exhibit 8 does not one time assert any act taken on behalf of the Moores or Smiths relevant to their mortgage on property then sold, through Greehaws, to SLCA. Not a word.

Defendants' agree Counsel needed to review bank records but that was something between Moore, Smiths and the bank. How or why Moore and Smiths contracted with the bank for SLCA to tender payment at that bank is not part of any agreement between SLCA and the Moores or Smiths.

Defendants' are not liable for Moore and Smiths Motion for Summary Judgment. Nothing about reviewing Springers Motions or the Government's Motions on page 7 in any way is attributable, or necessary, in Moore and Smiths securing their First Mortgage on the property owned by SLCA. Exh 8, pg 7 That mortgage was always secure and first.

There is not a single entry Counsel asserts on page 8 that is necessary for Moore or Smiths to secure there interest in SLCA's property. Springer's criminal trial or Smiths testimony, or preparation for that testimony, is not connected, in any way, to the "assumption agreement" between Moore, Smiths and SLCA. Exh. 8, pg 8 Springer was not party to that agreement.

Counsel's review of certain filings by Springer to Tenth Circut or Supreme Court, or a letter from Mr. Strong about balance owed by SLCA, or the 3.6 hours he says he spent reviewing "payment records," which he already reviewed at the bank and to which his claims for Moore

and Smiths were based, shows this billing
is not accurate as to the Moore Trust
or Smiths by Counsel.

In fact, it contains no date it began
and only states a "date" this alleged
work was performed.

There is no reason anyone should owe
Counsel for assisting the United States
or Keith Han in his need for a transcript
of Federal Court for the purported
buyer of the SLCA property, Exh. 8, pg 9

The United States of America secured
a purported order to have its "PALS"
liquidate any interest the Court said
in equity Springer held in SLCA's
property.

Although PALS is not authorized by any
law to exist outside the District of Columbia,
see Title 31, §301 (office of Secretary in D.C. at
seat of gov.); see also Title 4, §71 (seat of gov.
defined); see also Title 4, §72 prohibit office
of Secretary to exercise outside D.C.), Counsel
directs he has helped them in Tulsa, Hughes, supra

No matter what Counsel says, The Moore
Trust and Smiths are parties in 10-5037.
Their opposition was due on 8-20-10 and
they filed no brief or Motion to continue,
Exh. 8, pg 10.

Counsel's Motion to Clarify, or his 500
page delivery, or his review of Federal Rules
of Civil Procedure, or 10th Circuit and Supreme
Court, are not liabilities owed by Springer
to Moore Trust or Smiths.

Counsel may wish they were but they
absolutely are not connected or necessary.
The Claims on page 8, 9, and 10 are not
reasonable or necessary for Moor Trust to
secure its $2,400 mortgage, or each Smiths

17

$1,250.00 interest in a mortgage.

Counsels need not to go to out of State depositions shows his attendence of in Tulsa depositions was not necessary.

## V Note not owed on Mortgage

Counsel's first full jab at Springer is for claiming "There is no current mortgage owed on any property." Motion at 4. Counsel claims this "claim" in a "Motion For Summary Judgment" was knowingly incorrect, contrary to fact and law, and blatantly specious." Id.

Page 2 of Exhibit 3 shows Springer is not wrong!

"Neither this agreement, nor any provision hereof may be changed, altered, waived, amended, discharged or terminated orally, but only by an instrument reduced to writing, signed by all parties."

SHCA agreed to pay the note at the times and in the manner in all respects as therein provided... to perform each and all of the Mortgage..." Exh. 3, pg 2, para. 2

The Mortgage at issue States the maturity date of April 15, 2001 concludes the promissory note and concluded the "assumption agreement" as to the Mortgage note.

Counsel nor the Moores can rely upon the assumption agreement or the Mortgage to determine the balance owed.

Springer does not dispute that payments on the Mortgage were made through February, 2008. Counsel claims his

18

Clients' are owed 1% per month on the claimed unpaid mortgage. This issue is currently on appeal in 10-5037 and Moore Trust or Smiths filed any opposition and that opposition was due on August 20, 2010. Counsel states on August 22, 2010 he contacted the 10th Circuit. Exh 8, pg 10 See also Exh. 7 pg 1 ("note").

The claim the interest is calculated at 1% per month is also erroneous. Exh 5, pg 1

Counsel has not provided any evidence that since April 15, 2001, the interest on the promissory note is 1% per month. There is no evidence because no agreement was ever entered into per the terms of the assumption agreement.

Defendants agree as of April 15, 2001, a balance was owed on the promissory note. However, how that balance was calculated as of February 15, 2008 was in mathmatical and factual error.

Counsel does not dispute payments in the amount of $360.06 were credited to SLCA's promissory note balance from April 15, 2001 to February 15, 2008.

This is 81 payments at $360.06 equalling $29,164.86. The mortgage balance as of April 15, 2001 was way less than this.

Defendants contend no written agreement amending the assumption agreement was ever made as the agreement requires.

Springer only contends he no longer owed in writing any promissory not to Moore or Smith after February 15, 2008.

## II  Counsel fees are unreasonable.

In the event, for purpose of appeal, this Court decides it has jurisdiction over Counsel attorney fee claims by Moore and Smith, Defendants' claim such fees are not reasonable.

The suit against Springer and SLCA never placed in jeopardy the mortgage interest held by Moore and Smiths on the promissory note. Motion at 5

Counsel claims when the Amended Complaint was filed on October 10, 2008, he was not, as an attorney since 1968, capable of advising his clients as to the extent their mortgage would be recognized. Motion at 5 (or paid)

Moore and Smiths directed Counsel to cooperate fully with the U.S. Attorney in the Government claim against Springer. Motion at 6

Counsel told his clients their priority interest would be decided in the event the Government prevailed. Id What?

Counsel admits what he did had no bearing on the Mortgage. Id

Counsel states in late July his clients waived service. Yet, his billing states that was the "new set of waivers." Exh. 8, pg 1

Counsel admits he did not file an answer to the complaint until January 28, 2009. Exh 8, pg 5  This was 7 months after Counsel says he waived service. Even if July 31, 2008 is the measure date, Counsel did not even attempt to file anything until November 24, 2008, Exh 8, pg 3

Counsel admits he was out of Time. Way out of time.

Being contacted in June, 2008 to waive service, waiving service, and not entering any appearance until after your client is unlawfully deposed, in November, 24, 2008, is not reasonable practice of law in Federal Court.

Counsel claims he did not decide to enter his appearance for Moore or Smith until after the deposition of Moore and Smith on November 21, 2008. Counsel's claim his clients deposition was authorized pre-answer and without discovery is clearly erroneous.

Counsel's explanation on page 6 and 7 as to why he charged his clients what he did, while not even knowing whether his clients mortgage had priority over a 1999 Tax Lien Notice is just not believable.

Counsel's efforts to help the United States in their prosecution of Springer, although believable, is not reasonably or unreasonably related to the priority of a mortgage that in Defendant's position, in writing, had ceased on February 15, 2008. ("after consultation with U.S. Attorney Strong...")

Counsel claims all the work he did was "necessary to assert and obtain Court order payment of the mortgage against the property." Motion at 8. This is factually and legally untrue. It was a note.

Counsel never explains how his clients interest were ever in any "jeopardy", if it is determined they have any in writing by the 10th Circuit.

The multiple filings and discovery are not related to SLCA's assumption agreement. Furthermore, no priority should be considered.

Counsel also seeks fees to help the "IRS Foreclosure sale", Motion at 8

21

Counsel makes it undeniably sound like he is an employee of either the IRS or United State Attorney.

Whichever, his time spent clearing up a Title mess created by a purported nominee theory is not in any way associated with securing his first priority interest in SLCA's property.

Because Counsel did not object to being placed "third" in priority instead of First (even though no written document amends the "assumption agreement") is his error in practice not Defendants.

Counsel has done whatever the IRS and United States has asked of him. However, that being said, none of the acts taken are in securing the First priority on a Mortgage that predates the Secretary's purported lien interest by over 3 years. The note was for 8 years.

Mortgage, 1994, assumption 1996, lien 1999, Defendant understands the problem associated with objection to Counsel's claim.

Defendants' compare this to a claim by Counsel that because he was on his way to a deposition and hit a bump spilling coffee that the cleaners could not remove, Counsel billed his client for a new shirt and the dry cleaning bill even though the stain was not removed.

SLCA was not ever foreclosed on by Moores and Smiths. Springer was never liable for any unpaid mortgage. Defendant's maintain nothing in writing supports Counsel's claims otherwise. The 1% per month since April 15, 2001 is unjust. Even if interest was at 10% since April 15, 2001, SLCA owed no

mortgage, Springer was never the "Mortgagor."
Motion at 8. The note was paid by 2.15.2008.
Counsel's claims assisting the title Company
show nothing beneficial to Moore and
Smiths but do show benefit to the
"bidder."

VII  Claim for Fees and cost out of Time.

This Court has allowed Counsel to
file documents out of time, over Springer's
objection, then ordered no more filings, then
allowed filings, again over Defendants'
objections, which resulted in an erroneous
cross claim and counter claim, fees and costs.
The Judgment being appealed in 10-5037
was entered on March 16, 2010. On September
8, 2010, Counsel, almost Six Months later file his
motion. Springer does not have a copy of
local Rules as he is in prison, but knows
claims for costs and attorney fees are
to be made within 20 days of Judgment
or there about (sorry I am not sure), and
Six Months is well outside of that
time period.
Counsel entered into the case Six Months
out of Time and moved for Attorney fees
and costs Six Months out of Time.
For this reason alone Defendants
request Moore and Smiths Motion for
Attorney fees and cost be denied.

VIII   Claim of Cost unreasonable.

The Cost of deposition on Moore and
Smith is on the Government on Nov. 20,
2008 and Nov. 21, 2008, not on Springer,
Exh. 8, pg. 10, (nor SLCA)

23

By his entire pacer statement being used, Counsel does not explain why those documents were not sent to him Free as they are for all litigants.

Billing Defendants for his entire office Statement is rejected. Counsel should produce the Pacer Statement and show reasonableness. He should explain why the Free copies were not good enough for him.

Lastly, 683 copies at .15 per copy to help an attorney For a Title Insurance Company are not reasonable costs associated with Moore and Smiths priority mortgage claimed of less than $15,000 for all Four Grantors as of February 15, 2008, or as of January 28, 2009 when their claim of priority was filed.

It is clear by this record Mr. Strong, was directing Counsel what to do.

Defendants never agreed to be liable for the fees, interest at 1% per month since April 15, 2001, or the costs claimed owed by Counsel.

IX    Conclusion

Defendants' request This Court deny the Moore and Smith Counsel's Motion For Attorney Fees, 1% per month on the remaining unpaid balance as of April 15, 2001, and costs claimed owed by Counsel in his 10 page Statement, Exhibit 8, as:

1) Springer is not liable for the unpaid balance claimed owed because the assumption agreement was not changed in writing or in Springers

24

name to make Springer liable;

2) The note expired on April 15, 2001;

3) Neither Springer or SLCA agreed to 1% per month on unpaid balance after note terminated on April 15, 2001;

4) SLCA paid the note at issue in the assumption agreement;

5) none of the charges by counsel are in relation to a foreclosure on a note because no note exists as of April 15, 2001, per the assumption agreement dated July 29, 1996;

6) SLCA is not liable for the specific fees counsel apparently has charged his clients as to each entry from June, 2008 thru September, 2010;

7) This court lacks jurisdiction;

8) The request for fees, 1% interest from April 15, 2001, or at least from February 15, 2008, and cost is file way out of time!

9) The costs claimed are not costs to which SLCA or Springer are liable for as they are not reasonably connected to Mbure or Smiths note or Mortgage claims against SLCA.

Respectfully

Lindsay K Springer

25

# Certificate of Service

I hereby Certify that on September 15, 2010, I mailed Springers response, in opposition to Moore and Smith's Motion for Attorney fees, 1% interest per month and costs to Court Clerk's Office, 333 W. 4th St, Tulsa, Oklahoma, 74103. I certify that on all parties to this case will receive copy through the Court's ECF System.

James Strong
Robert D. Metcalfe
Allen Mitchell

Lindsey K Springer
#02580-063
B16-FCI
1900 Simler Ave
Big Springs, TX 79720

26

(1)

# Table of Contents

I Opposition to Introductory Statement

    A. The laws at Issue          1

        (i) Statutes          2

        (ii) Regulations          5

II Jurisdiction          7

III Movants' Claims          9

    A. Moores Claims          9

    B. Smiths' Claims          12

IV Counsel's performance          14

V Note not owed on Mortgage          18

VI Counsel Fees are Unreasonable          20

VII Claim for Fees and Cost out of Tme. 23

VIII Claim of Costs unreasonable          23

IX Conclusion

## Authorties.

Armstrong v. CIR 15. F3d 970 (10th 94)    4

Allnut v. CIR 523 F.3d 406 (4th 08)    6

Gillie v. US. 33 F.3d 46 (10th 94)    4

Guthrie v. Sawyer 970 F.2d 733 (10th 92)    3,4

Hughes v. U.S. 953 F.2d 531 (9th 92)    3,5

March v. IRS 335 F.3d 1186 (10th 03)    3

(over)

(ii)

Snyder v. IRS  596 F. Supp 240 (In 84)     4
Spotts v. U.S.  429 F.3d 248 (6th 05)      8
Taylor v. IRS  69 F.3d 411 (10th 95)       3

## Statutes

4 U.S.C 72

26 U.S.C 6020(b)                            3
        6201                                3
        6202
        6203                                5
        6211                                2
        6212                                2
        6213                                2
        6215                                3
        6301                                3
        6303                                4
        6321                                4


        7401                                5,7
        7621                                4,6
        7403                                7
        7701(a)(1)                          3
        7701(a)(11)                         2,3
        7701(a)(12)
        7805                                4,5
        6011                                5
        6091

## Regulations

26 CFR  601.101                             6
26 CFR  301.6203-1                          6
        301.6215-1                          6
        301.6321                            6
        301.6301                            3,6,7
        301.6335                            7
        301.7701-9                          7
        301.7701-10                         7
        301.7501                            7
        301-7505                            7
        301-7506                            7
        301.7621                            6