In The United States District Court
For Northern District of Oklahoma

USA

v.                                      08-CV-278-TCK

Lindsey K. Springer, et al

**FILED**
JAN 03 2011
Phil Lombardi, Clerk
U.S. DISTRICT COURT

Springer's objections to Report and Recommendation dated 12/13/10 (Doc. 227)

Lindsey K. Springer ("Springer") files his written objections to the Report and Recommendation dated December 13, 2010 (Doc. 227), pursuant to Rule 72 and Title 28, § 636(b)(1)

I. Springer's objections.

Springer objects to the Magistrate finding he has jurisdiction to consider the Motion for Attorney Fees filed by Allen Mitchell (Movant).

In order for this Court to have jurisdiction the Secretary must authorize the amended complaint dated October 10, 2008, and although Springer has sought evidence of such authorization, the U.S. Attorney nor Tax Division have produced such evidence.

Title 26, § 7401 states no civil action shall be brought unless authorized by the Secretary and Attorney General. Title 26, § 7402 is the alleged provision to which this Court's alleged jurisdiction is claimed. Clearly, the President is seeking to "enforce" the tax laws upon Springer by his amended complaint. This Court's jurisdiction to help him must be authorized.

(1)

Congress only authorized the Secretary of the Treasury to "enforce" laws related to internal revenue. See U.S. v. LaSalle, 437 U.S. 298, 309 (1978); See also Springer v. U.S. 447 F. Supp 2d 1235, 1238 (N.D. OK 2006)

Congress gives the Secretary the power to canvass Internal Revenue Districts to assess and collect taxes. See Title 26, § 7601 and 7602. U.S. v. Bisceglia, 420 U.S. 141, 145 (1975) See also 26 CFR § 301.7601.

The President is required to establish Internal Revenue Districts. See Title 26, § 7621. See also Hughes v. US, 953 F.2d 531, 542 (9th Cir. 1992)

The U.S. Attorney or Tax Division have not presented any evidence the President has complied with §7621. He has not.

The Secretary has delegated authority to assess and collection functions only to the District Directors of each Internal Revenue District. See 26 CFR §§ 601.101, 301.6203-1, 301.6301-1 (2008)

All offices attached to the Seat of the United States Government are prohibited from exercising there offices' authority outside the District of Columbia unless expressly provided by law. See Title 4, § 72; Hughes at 542

The U.S. Attorney or Tax Division have produced no evidence the office of the Secretary is authorized by law to exercise his office in the State of Oklahoma.

This Court lacks jurisdiction to do anything but dismiss the Amended Complaint for want of jurisdiction.

(2)

A. Additional Jurisdictional Objection:

This Court has issued orders in this case while Springer was under indictment in 09-CR-043. RR at 13

On July 2, 2009, Judge Friot found that he had jurisdiction over 1990 through 1995 due to a "criminal referral" dated June 3, 2005. Doc. 100; Doc. 383. Exh. 1

The Secretary of the Treasury loses his authority once a criminal referral is made to a U.S. Attorney for Prosecution. See LaSalle at 312. In Anaya v. U.S. 815 F.2d 1373, 1377 (10th Cir 1990) the 10th Circuit found 7602(d) prohibit the Secretary from exercising his authority after referral. ("as long as a referral has been made to Justice for criminal prosecution.") See Stoffels v. Hegarty, Fed Appx 814. See also U.S. v. Powell, 379 US 48, 57-58 (summons must be for a proper purpose.)

How would this Court have jurisdiction from the Secretary under section 7401, 7402 and 7403, while the U.S. Attorney claimed he had a referral from the Secretary as of June 3, 2005?

Equally, there is evidence a referral had been made prior to October 6, 2004. See Doc. 252, pg 2.; Doc 293, pg 3. in 09-CR-043.

Springer attaches the referral given in 09-CR-043 as Exhibit 1. The Court in 09-CR-043 even imposed a restitution order including the money from 1990-1995 claimed in this case. Exh. 2.

(3)

This Court has no subject matter jurisdiction over the amended complaint due to the referral alleged in 09-CR-043, for years 1990 through 1995, that there is no lawful authorization by the Secretary under §7401, 7402, and 7403, and due to the President not placing the boundaries shared between the State of Oklahoma and the Northern Judicial District of Oklahoma, within any Internal Revenue District.

### B. Objections to Background

Springer <u>agrees</u> he assumed the mortgage and debt on July 30, 1994, <u>but</u> that "assumption agreement" specifically forbids any change, amendment, or alteration orally, and any such agreement must be "reduced to writing, signed by all parties." <u>Moore</u> Exh. 3, pg 2. This was for SLCA.

The Magistrate recommends Springer defaulted the assumption agreement on February 11, 2008.

The Mortgage, with Power of Sale, clearly states the promissory note dated April 15, 1994, in the principal amount of $30,000 "at 12.00% interest matures on April 15, 2001. <u>Moore Exh</u> 2. That agreement ends April 15, 2001.

Furthermore, Springer <u>objects</u> to the assertion "he made all payments until he defaulted on February 11, 2008."

The Magistrate does not explain how he relies on the assumption agreement and Mortgage for certain facts but

(4)

chose to totally disregard others apparent on the face of the Mortgage and assumption agreement.

Springer admits he is not an attorney but there is no way for this Court to arrive at either the February 11, 2008 default date proffered, or the 1/2% interest after April 15, 2001.

The $4,677.93 is also objected to as it is premised upon these errors in facts.

Springer demands a Jury Trial and this Court has clearly deprived Springer of that right on these clearly erroneous findings of fact to which the Seventh Amendment was to protect.

Springer objects to the finding SLCA's liability is his under the terms of the assumption agreement.

Springer objects that any Jury has determined the Secretary of the Treasury has or can claim a lien arose against Springer on May 29, 1997 or April 9, 1998. The Magistrate's citation to 26 U.S.C. § 6321 is in error with Treasury Regulations. Title 26, § 6321 only authorizes the Secretary to record a lien under certain conditions, all of which have not been alleged or shown in this case to exist.

Springer objects to the Magistrate's finding the "IRS" filed notices of Federal tax lien in Creek County on August 1, 2008. RR at 2

Springer objects to the Court using the phrase "IRS" for Internal Revenue Service until such time as the Tax Division provides evidence of the IRS current delegation

⑤

by the Secretary of the Treasury. There was no notice of lien filed on August 1, 2008. RR at 2.

Certificates of Release were recorded in the office of the Secretary on August 23, 2007. They remain recorded.

Springer further objects that the "IRS" revoked these releases.

Springer also objects that the "IRS" filed new notices.

Only the Secretary can issue notices through the District Director. See 26 CFR § 301.6321, 301.6323. And only the District Director can revoke a Certificate of Release. See 26 CFR § 301.6325. Collection is only at 26 CFR § 301.6301.

There is no evidence before this Court Ms. Norman is or was authorized to either revoke the releases that remain recorded in the office of the Secretary, or that she was authorized to issue the August 4, 2008 Notice of Liens. RR at 2. No regulation is cited.

Springer objects to the finding the action was filed on May 9, 2008. The current Amended Complaint was filed on October 10, 2008. The Court mooted all Springer's filings after the October 10, 2008 filing. No 7401 or 7403 authority is in the record.

Springer objects to the finding he defaulted on any note in February, 2008.

Springer objects to the finding the Mortgagees did not seek foreclosure until they were named as defendants.

(6)

Mortgagees did not seek foreclosure from July 31, 2008 to January 28, 2009. Furthermore, Mortgagees did not seek foreclosure from April 15, 2001 to January 28, 2009.

The actual time from maturity to claim is 7 years, 9½ months, and 180 days from service of process. RR! at 12

Springer objects to the Magistrates construction of the Courts order (doc. 179)

Springer objects to the Magistrates finding the Mortgagees are entitled to reasonable attorney fees under the terms of the Mortgage. The Mortgagees do not even explain how much each owes for their outdate, defaulted, mortgage claims.

This claim is not about the Mortgagees, it is about Allen Mitchell working for Robert D. Metcalfe as a pawn. Had the "Mortgagees" sought foreclosure, won, they may have been entitled to maybe $1,000.00.

Springer objects to the Magistrate citing § 6321 and Supreme Court cases like U.S. v. Pioneer and U.S. v. New Britain because those cases are premised upon liens being issued when the President complied with Title 26, § 7621, and when there existed a District Director as a delegate of the Secretary of the Treasury. Since the Court has ignored numerous cases on Internal Revenue Districts and District Directors, as to liens, levy, assessment, and collection. See Hughes v. US, 953 F.2d 531, 536-542 (9th Cir. 1992) and March v IRS, 335 F.3d 1186, 1188 (10th Cir. 2003) the Court should continue with the history

in this case of ignoring 100 years of judicial jurisprudence. Just the authorization issue alone should have stopped this action for want of jurisdiction when a criminal referral is said to exist.

Springer objects to the conclusion there is a "later filed notice of federal tax lien." RR at 7

The Magistrates citation to U.S. v. Equitable Life, 384 U.S. 323 (1966) likewise relies upon the "history" of § 6323. R.R. at 8. What is that history?

The Magistrate recognizes under Section 6323 the "lien" "shall not be valid" "until notice thereof" "has been filed by the Secretary." RR. at 8 (N.3).

This hinges the purported August 4, 2008 Notice of Lien upon whether it complies with "subsection f." Id.

26 CFR § 301.6323 directs the method of notice be issue by the District Director. As the President acknowledges, those delegates of the Secretary no longer exist since late 1999. The revocation of release was even more unlawful as the Secretary of the Treasury has rejected it.

Springer also objects to this Court concluding Mr. Mitchell did not correctly file his answer is clearly erroneous. He did not file anything for 7 months after he waived service. That is not just a incorrect determination.

Springer also objects to the hourly rate and total hours. The Magistrate does not explain how he arrived at his more than double the amount claimed to

⑧

be at issue.

Mr. Mitchell did not explain why he did not seek foreclosure and why he needed to in light of the Presidents claims.

This court should not reward Movants Counsel for unnecessary action. Everything was unnecessary because the Mortgage was protected if any was owed.

Springer contends none was legally owed and the Courts recommendation requires an amendment to the assumption agreement SLCA, or Springer never entered into and do not agree to enter now.

The Magistrate's report recommends Springer pay for Mitchells erroneous practice of law in an area he has never been.

Springer submits 9.1 hours to prepare a 7 month late answer is unreasonable. Even if an answer was required, the cross and counter claims were not. The U.S would have been required to pay the first in line.

7.5 hours was also unreasonable to make a counter and cross claim as it was unnecessary.

26.1 hours for Summary Judgement Response and reply. Nothing here preserved any claim the Movants had with the U.S. Clearly, the claim with Springer is unsupported by the assumption agreement and mortgage note.

12.1 hours for post filing activities is about as ambiguous as it gets.

The Magistrate should itemize what he is paying so proper objection can be made

9

If this Court must endorse counsels conduct them $1,000.00 is more than fare so this issue can move to the next level. Springer incorporates his entire objection herein.

### Conclusion

Springer request this Court overrule the Report and Recomendation and address each issue raised herein setting aside its order and judgment, for the reasons stated herein.

Respectfully Submitted
*[signature]*
#02580-063
Big FCI
1900 Simler Ave
Big Springs TX 79720

### Certificate of Service

I hereby certify I mailed the objections to the Court Clerk at 333 W. 4th St, Tulsa, Okla, 74103 on December 29, 2010. I further certify that all parties will receive service through the ECF System;

Robert Metcalfe
Allen Mitchell

12/29/10              *[signature]*

(10)

Western Criminal Enforcement Section
P.O. Box 972, Ben Franklin Station
Washington, D.C. 20044
(202) 514-5762
Telefax: (202) 514-9623

EJO'C:RACimino:jhm
DJ# 5-59N-7848
CMN# 2000201076

Exh 1, 1 of 3

June 10, 2005

<u>CERTIFIED MAIL - RETURN RECEIPT REQUESTED</u>

David E. O'Meila, Esquire
United States Attorney
Northern District of Oklahoma
3600 United States Courthouse
110 West 7th Street
Tulsa, OK 74119

Attn: AUSA Melody Noble Nelson

Re: <u>Grand Jury Investigation</u>
Patterson Investigation
Northern District of Oklahoma
DJ# 5-59N-7848
Concerning: Lindsey K. Springer

Dear Mr. O'Meila:

Reference is made to a letter dated June 3, 2005, the Special Agent-in-Charge, Internal Revenue Service, Dallas, Texas, approving your request to expand an existing non-tax grand jury investigation to include an investigation of potential criminal tax violations in the above-entitled matter. In accordance with Tax Division Directive 86-59, the Tax Division has no objection to this expansion.

Pursuant to established procedures, no tax or tax-related charges, including charges to which a target has agreed to enter into a plea agreement, may be filed without prior approval of the Tax Division. You are reminded that any expansion of this grand jury investigation, to include additional targets, requires Tax Division approval as well. If you determine that use of the statutory compulsion process pursuant to 18 U.S.C. § 6003(b) or a non-prosecution agreement with a witness ("letter immunity") is warranted, refer to the procedures set forth in U.S.A.M. § 9-23.000, <u>et seq.</u>, and U.S.A.M. § 9-27.600, <u>et seq.</u>, respectively.

DJ File Copy →

APP. 34
These are Supreme Court numbers on each page
Please disregard in this case LKS

Upon conclusion of the investigation, please provide the testimony, documents, and other materials accumulated by the grand jury to the assisting Internal Revenue Service agent for the sole purpose of analyzing the potential criminal tax aspects of the case and preparing a report setting forth his or her recommendation regarding prosecution. This report will be reviewed by an Internal Revenue Service Counsel, who will make a written evaluation and recommendation to the Special Agent-in-Charge. The Special Agent-in-Charge will forward the reports and exhibits, along with his or her recommendation regarding prosecution to the Tax Division.

You must provide the Tax Division with a written report of your views regarding the prosecution potential of this case, the non-tax charges, if any, that you intend to bring, and the anticipated date of indictment. In addition, the case should be submitted to the Tax Division for review at least 60 days prior to the date on which you need a decision.

You have the authority to terminate this investigation, **provided** that prior written notification is given to both the Tax Division and the Internal Revenue Service. This notification should indicate that the matter is terminated pursuant to 26 U.S.C. § 7602(d). Please be reminded that your use of all tax returns and return information is governed by 26 U.S.C. § 6103(h). In the event that the tax aspects of the investigation are terminated, you must obtain a court order pursuant to Section 6103(I) in order to retain and use such returns and return information previously obtained under Section 6103(h).

In all future correspondence, please use the following caption:

    Re:   Grand Jury Investigation
            Patterson Investigation
            Northern District Oklahoma
            DJ# 5-59N-7848
            Concerning:

Please list each target (individuals and entities) who is the subject of the correspondence.

A copy of the Special Agent-in-Charge's letter and its attachments is enclosed. You are reminded that Fed. R. Crim. P. 6(e)(3)(B) requires that you furnish the court with the names of all persons with access to grand jury material. Enclosed with the Special Agent's letter are the IRS Counsel's memorandum and IRS Form 9131 (Request for Grand Jury Investigation) which lists all Internal Revenue Service personnel to whom such material has been disclosed.

APP 35

Please advise all Internal Revenue Service personnel who assist you in this investigation, and who will have access to grand jury material, that such material is supplied to them on the following conditions:

1. All grand jury material will remain under the custody of the grand jury, the United States Attorney, and the Tax Division;

2. Disclosure of grand jury material may be made only to Internal Revenue Service personnel who are assisting in the investigation and formulating a recommendation by the Service regarding prosecution, and such Internal Revenue Service personnel may only use the grand jury material for this purpose;

3. The Internal Revenue Service will furnish the Tax Division with advice and a recommendation, whether favorable or unfavorable, regarding the prosecution potential of this case;

4. The Internal Revenue Service will return all grand jury material to you when it is no longer needed for use in advising and assisting the Department of Justice in the investigation of this matter.

If you have any questions about this case or your authority under Directive 86-59, you may contact Tax Division, Western Criminal Chief Ronald A. Cimino at (202) 514-5762. Please acknowledge receipt of this letter and its enclosures.

Sincerely yours,

EILEEN J. O'CONNOR
Assistant Attorney General
Tax Division

By: RONALD A. CIMINO
Chief, Western Criminal
Enforcement Section

Enclosures
(1 Volume)
cc: Special Agent in Charge
    Dallas, Texas

APP 34

4-23-10                                                Exh. 2

                                                              15

1  could be imagined. And by saying that about Mr. Stilley, I
2  don't mean to put Mr. Springer in a favorable light, but,
3  nevertheless, the situation with respect to Mr. Springer is a
4  bit more complicated.
5      I will first cover the tax loss which I conclude for
6  guidelines purposes is attributable Mr. Springer. For 1990
7  through 1995, the assessed amount of tax was $91,196.
8      Now, I'm going to read the gross income from my notes with
9  respect to '99 through 2007, it's a simple mathematical
10 proposition to take 20 percent of this, but I won't read the 20
11 percent calculation into the record other than when I get to
12 the total.
13     The gross income that I attribute to Mr. Springer for 1999
14 is $111,702; for 2000, it is $160,000; for 2001, it is $63,000;
15 for 2002, it is $48,986; for 2003, it is $391,171; for 2004, it
16 is $117,550; for 2005, it is $278,500; for 2006, it is
17 $185,650; for 2007, it is $141,400; for a total gross income of
18 $1,497,959. At 20 percent, the tax loss attributable to that
19 is $390,787. I also attribute to Mr. Springer the state tax
20 loss --
21          MR. O'REILLY: Your Honor, I apologize for
22 interjecting, but you say the tax loss was 390,000?
23          THE COURT: That's --
24          MR. O'REILLY: That's 20 percent? Because I believe
25 that would be an overstatement of the tax loss for --

Dear Court Clerk,

Lindsey Springer here and thank you for all you do. I just wished to inform you that I never received the Report and Recommendation dated 12/13/10. Someone sent it from a friend who got it on the internet. I do not know why but thought I would mention it.

Happy New Year

12/29/10.    *Lindsey Springer* (signature)